Tilghman C. J.
The plaintiff’s counsel have endeavoured, by connecting'the order for insurance with the policy," to shew, that the risk run by the two companies was different, and, consequently, there was not what is deemed in law a double insurance. They say, that' no recovery can be had against The United'States Company, in the first place, because the order for insurance referred to a vessel of which Prince was to be master, and in which there was no alteration by the subsequent memorandum. ' But in this I think they are wrong, because the policy extends to any Swedish vessel, whoever might be the master, and I can perceive no reason for suffering the policy to be contracted in this respect by the order. It does not appear to have been material to either party, who should be the master, nor does either the policy or the order designate any particular vessel; the plaintiff engaged that it should be a Swedish vessel, which was a matter of importance; but, under that restriction, hé was left at liberty to take what vessel and what master’he pleased. The plaintiff’s second point requires more consideration. The order for insurance contains a representation, that the property appears to be Swedish, which is supposed to be a material circumstance, in calculating the risk. The representation was not "true, because the property was consigned to. the plaintiff, a native citizen of the United States on his own account and risk, and therefore did not appear to be Swedish. Hence the plaintiff’s counsel infer, that no recovery can be had against The United States Company. But they contend, that the case is different with the policy underwritten by. the defendants, because the memorandum of the 2rth June, waved the representation in the order for insurance', and only required that the property should be shipped by Prince, and consigned to the plaintiff. If I could agree with *480 the plaintiff’s counsel, that the representation, that the property should appear Swedish, was waved, by the memorandum in the defendants’ policy, I should agree with them also, in their conclusion, that the risk in the two policies was different, because it is manifest by the letters from Prince to the plaintiff, that in his opinion, it was of very great importance, to give the goods the complete appearance of Swedish pro-perty, in order to protect them against British cruisers ; nay, he goes so far, -in his letter of the 24th April, as to beg the plaintiff to mention this, among other circumstances, to the underwriters, in order to induce them to take a small premium, Nor is there any reason to think, that the defendants held a different opinion. But upon a careful examination of the order of insurance, and memorandum, I do not perceive that the representation .in the former, is dispensed with by the terms of the latter. We are struck, at once, with the circumstance of the premium; no additional premium was asked, in consequence of the memorandum. As to permitting the shipment to be made in several vessels instead of one, or extending the time of sailing, from the 20th to the 30th June, we may easily suppose that matters of so little moment, required no increase of premium. But it is quite a different thing, when you come to dispensing with an article, by which the hazard of capture was lessened. Let us see then, what ground there is for dispensing with the appearance of Swedish property. The memorandum is, that the insurances shall extend to goods shipped hy Prince and consigned to the plaintiff; but it is not said, that they shall be or appear to be, the property of the plaintiff. Prince had acquired the character of a Swedish subject. Is there any thing in the memorandum, which is inconsistent with thz property being, or appearing, to be, in Prince, or any other Swedish subject? It was all along intended, that the goods should be consigned to the plaintiff. Prince’s letters shew that to have been the plan, at the very moment when he was urging the necessity of covering them by Swedish documents. Even at the date of the memorandum, the plaintiff had no reason to think, that part of the goods would not be the actual property of Prince, and it must have been his intent to cover the property to the amount of 20,000 dollars, the aggregate of the insurances by both companies, if so much had been shipped in one bottom. In Prince’s letter of the 15tfc *481 May, 18Ó8, which induced the plaintiff to have the memoran¿lum made, he gave no intimation of any change of the plan of shipping the property as Swedish. How then can it be inferred, that the defendants meant to dispense with this material circumstance, merely because they assented to the goods being shipped by Prince and consigned to the plaintiff ? That the circumstance was material, the plaintiff must not deny ; because, iffit was immaterial, its not being true would not prevent a remedy against the United States Company. The policy, and the order for insurance, remain in force in all respects in which they were not altered by the memorandum. The alteration as to the time of sailing, is the same in both policies ; the alteration as to shipping in several vessels instead of one, and the goods being shipped by Prince and consigned to the plaintiff, is confined to the defendants’ policy. In that respect the policies differ. In all others, they are the same. But the difference as to employing several vessels, or only one, is immaterial as the case stands, because, in fact, the shipment was made only in one ; and the circumstance of the goods being shipped by Prince and consigned to the plaintiff, is quite consistent with both policies. It appears to me, therefore, that whether the' plaintiff can recover against the United States Company or not, the goods insured by the defendants, were also insured on the same risk, by that company, and consequently, accbrding to the terms of the policy no recourse can be had to the defendants, if the plaintiff should be barred, in his action against the other company, by not having complied with his representatién, i'c will be his misfortune, but cannot alter the law. I am of opinion, that the insurance was double, and therefore the plaintiff is not entitled to recover.
GiRson J.
The Clause on which this question depends, was, in consequence of the decision in Tlyurston v. Koch, introduced into the policy, to prevent contribution between different underwriters, and to render them liable in succession, according to the respective dates of their policies, instead of suffering the assured to exact indemnification from . any one in particular whom he might please to select. Where • all parties are liable, it may be no easy matter to determine whether the policies are in all respects alike as to risk, voyage, adventure, and the perils insured against ; and if ' *482 they are not, then what degree of difference as to identity in . any, or all, of these particulars renders each policy a contract of single insurance. But where there is no common liability, there can be no contribution, and of course no double insurance. It is therefore unnecessary in this case, to consider how far the two policies are alike, or how far they differ; for if under all circumstances, the plaintiff cannot in any event have recourse to the United States Insurance Company, there can be no pretence for saying he was doubly insured, either when the risk commenced, or when the loss happened. The liability of that company is the only point in the cause; for whether the objections to the policy subscribed by it, may not be equally applied to that of the defendant, is not open to us : the verdict has settled that matter in favour of the plaintiff, and has submitted nothing to our decision but the question of prior insurance. In the investigation of that question, we are not to embarrass it with any consideration of the peculiar stipulations in the policy on which the action is founded ; for these may confuse us, but can elucidate nothing. It is argued, that the policy subscribed by the United States Insurance Company, was avoided on two grounds: First; by employing a master who was not the person specified in the policy : Second; by a representation of a fact material to the risk, which was not verified by the event. Both these grounds involve matter of fact, but as the jury have with the assent of the parties, referred the whole to the judgment of the Court, we are, I apprehend, to decide both the facts and the law. Then as to the first ground: by the written instruction, the United States Insurance Company, was ordered to effect insurance on goods “ by any Swedish vessel, Prince, master,” and the policy was so filled up. By the policy, no particular ship was identified or described, but the representation in the order as to the national character of the vessel, was strictly complied with. The master however, was changed. Although it is clear, that by the usual clause, “ or whoever else shall go for master,” the owner has authority, on a proper occasion, to change the master, yet he cannot do so from motives of mere caprice, or to serve his own interest without regard to that of his insurers. By designating the master, the insurers declare, as they have a right to do, that they repose especial confidence in his character and .skill, on which they intend mainly to rely} and these *483 may be, and usually are substantial considerations, in e.stimating the value of the risque which they agree to encounter. By the clause in question, they delegate a power of substitution to be exercised only when it will, in the judg■ment of the owner, conduce to the safety of the property insured, and consequently, as they are ultimately to bear all loss, to the exclusive advantage of the insurers. But this power is not to be trifled with. If it be exercised for trivial reasons, or for no reason at all, that, of itself, will be evidence of fraud, and will avoid the contract. Why then did not Prince come home as master in the Gustavia ? He was not disabled by sickness, or any other cause, from rendering to the insurers, those services which, under the stipulation in the policy, they had a right to expect from him. It appears from his correspondence, that when the Gustavia sailed, he had planned, and was then about to execute, for his own profit, a voyage from Guadaloupe, by the way of St. Bartholomews, to the United States. I confess I know not how to answer this. Justus Arnold, who sailed as master on the voyage insured, may have been as well qualified to navigate the vessel with safety, as Prince, or even more so ; but the insurers having stipulated for his services unless in the evetjt of his becoming unable to render them with advantage, it is clear the owner or his agent could exercise no discretion, except with a view to the advantage of the insurers. But if this construction should be thought too severe, there can, I think, be no doubt but the objection on the ground of misrepresentation, is valid. The character under which the property was to appear, must have been a substantial inducement to the contract, and have had some operation in regulating the premium. That the property should appear completely Swedish, for every purpose of being protected, was essential to its safety; and Prince in his letter to the plaintiff of the 16th April, 1808, gives some very good reasons to prove it: for if it had been shipped as American, there' would, as he says, have been great difficulty from its peculiar situation, in accompanying it with such proof of its national character, as would, in case of its being met with, satisfy a cruiser of its being bona jide American. Whether Stvedish, or American, it had every thing to fear from French priva^ teers, if any should be met with ; (but in a subsequent letter he says, there was little danger of meeting with any of these *484 in the tract of the voyage,) but from British cruisers nothing was to be apprehended, as long as it appeared completely 'Swedish. Can we, after this, doubt the importance of the Swedish character to this property ? Yet notwithstanding this representation, instead of being accompanied with the reqtiisite Swedish documents, it was shipped on account and risque of Ralph Peters, a native citizen of the United States, and so stated to be in the invoice and bill of lading, the only documents in evidence in the cause. I do not understand that it is pretended the Swedish character was in fact assumed, but it would seem that particular pains were taken to avoid it, and assume the American character, and if that were done for any purpose beneficial to the United States Insurance Company, it lay on the defendants to shew it. Whdn the loss happened, therefore, it appears to me the property was not covered by the policy subscribed by the United States Insurance Company, for that was avoided for want of a substantial compliance with a representation material to the risque. Both policies were at first exactly alike — and. this is the only thing that can create a doubt — but it cannot be denied that a substantial alteration was afterwards made in the policy subscribed by the defendant; while in that of the United States Insurance Company, there was no change* except as to the time of sailing. But to consider the question rightly, we must lay the terms of the defendants’ policy entirely out of view, the defence being rested on a supposed liability of both sets of underwriters. If the verdict had not been against the defendant, and the matter settled as to every thing but the question of double insurance, I confess I would not be altogether without difficulty in discriminating whether there could be any recovery against the present defendant on original grounds. If the subsequent agreement of the 27th June, 1808, should be considered a distinct substantive arrangement, complete in itself, and not referring to the representation in the order of insurance, but as having been substituted for it, then the goods were covered by the defendants’ policy; for they were actually shipped as they are described in the memorandum. And that it should be so considered, I am inclined to think from the mere circumstance of there having been any alteration at all; for the consignment of the goods to Mr. Peters was perfectly consistent with their being, at the same time, accompanied with all *485 documents necessary to render them ostensibly Swedish; and as an alteration of the agreement was unnec'essary to enable Prince to make the consignment directly to Peters, we must infer, the parties had something further in view, which could be nothing less than to change the character of the goods insured altogether. But if the old agreement was not dispensed with, but only extended to particulars not before embraced, then the plaintiff could not recover from any body. But this is, as I have said, a question already disposed of. As it appears to me, the plaintiff can in no event have recourse to the United States Insurance Company, I am of opinion this is not a case of double insurance, and that judgment ought to be rendered in his favour’.
Duncan J.
The question is simply this: was the cargo, for the loss of which indemnity is claimed from the defendants, insured by the prior policy of The United States Insurance Company. For if it was, then according to the terms of the stipulation there can be no recovery in this action.' All things necessary to entitle the plaintiff to recover have been found by the jury, subject to the opinion of the Court, on a question of double insurance. Double insurance is, where the insured makes two insurances, on the same risk; and the same interest. Or, as it is defined by Lord Mansfield, in Godin v. London Assurance Company, 1 Burr. 489, “ it is where the same man is to recover two sums, instead of one, or the same sum twice over for the same loss, by reason of his having made two insurances on the same goods or the same ship.” The two policies are considered as making but one insurance ; and as the law was settled in England, and in our own country, all the underwriters were bound to contribute in their just proportions. But the claim which gives rise to the present controversy was introduced, to avoid the inconvenience of contributions, by making the insurers liable in the order of time; restoring the ancient law and custom of merchants. The policy of the United States is of the 6th June, 1808, “ on goods 10,000 dollars, at and from St. Bartholomews to Philadelphia, on board any good Swedish vessel, Isaac Prince master, or whoever else shall go for master.” 8th June, 1808, by the Delaware, for the same sum on the same terms. If it stood on the original policies, no question could have arisen. For the poli *486 cíes are in the same words; and if we either look to them, or the orders for insurance, it is obvious, that the object of the insured was, to insure 20,000 dollars, on the same adventure, to be divided between the two offices. But it is contended, that by subsequent agreements, the contracts were changed and the situation of the companies altered, and so far as respects the United States, the alteration was such as absolved that company from the loss on the cargo shipped, which was a cargo of rum purchased on account of the plaintiff, shipped on board a Swedish vessel, by J. Prince, and which was lost on her'voyage from St. Bartholomews to Philadelphia. These agreements were made on the same day, 27th June. The alteration of the United States was, an extension of the time of sailing, from the 20th June, to the 1st July: that of the Delaware, not only extending for the same time, but a further agreement, that the “ insurance shall be on goods shipped by Isaac Prince, consigned to Ralph Peters, in any Swedish vessel or vessels.” These agreements change the original contracts no further than is directly expressed, leaving the policies in all other respects as they at first stood. It may be well here to observe, that neither the policies nor the memoranda of the subsequent agreements, confine the importation to any particular ship or ships by name, or to be navigated by any particular master; nor could it in fact be so. For by the last letter of Prince of the 15th May, he states, that the cargo was ready, and nothing wanting but a vessel; is apprehensive that he shall be-obliged to make use of one or two vessels if he can procure them, which he fears is impossible, and says Mr. Peters must regulate his insurance as he thinks best. No other shipment was made, but this cargo of rum, purchased by Prince for the plaintiff on the 29th May, 1808, and shipped the same day on his account and risk. Of this shipment it does not appear the plaintiff had any notice on the 27th June, the date of the memorandum.
The goods which were expected to be the proceeds of the enterprise in which Ralph Peters and Isaac Prince embarked, and which were to be the objects of insurance, were to be shipped by Prince, either as agent, factor, or partner, of Peters, and they were to be shipped to Peters, or consigned to him at Philadelphia by prince. The correspondence between Peters and Prince, the order to insure, the original *487 policies, and the subsequent agreements, stamp this transaction with the deep impression, that up to the 27th June, the subject matter of insurance, in the view of the parties, was 20,000 dollars, on any goods to be shipped or consigned to the plaintiff, from St. Bartholomews to Philadelphia, without any distinct appropriation of particular specific goods to either policy, and that owing to some cause, that amount was not procured at St. Bartholomews, or at least not shipped to Ralph Peters at Philadelphia, but only those 65 puncheons ofrrum ; and this appears to me to be the plain interpretation of the whole matter.'
The policies, as they originally stood, would both have embraced the shipment. What alteration did these agreements make so far as respected the United States P It did not narrow the insurance, nor make insurance on any new subject. It changed the time of sailing,, and nothing more. So far as it respected the Delaware, it extended the time of sailing; it restricted the subject matter to goods shipped by Isaac Prince, consigned to the plaintiff. In whateVer shape the question is put, from whatever point you set out, you must return to this only point, in order to decide justly. Was this cargo insured by the United States P Did the loss happen in the voyage and within the perils insured against ? Now what is conclusive with me, is this: either this cargo was insured originally by both offices, or it was insured by neither. If it was insured by neither, the plaintiff cannot recover. If it was insiired by both, he can only .resort to his first policy. The memorandum does not change the subject matter insured, in the voyage. They were to remain the same: with the United States, certainly the same ; and however the particular agreement with the Delaware might restrain the general insurance in their policy, it could not affect the United States policy. The time of sailing was extended by both agreements, and both to the same day. The adventure, the property insured, and the voyage continued the same. The property, which it was the object of both policies to cover, was as much secured by the general description of goods in the policy of the United States, as if they had been described by quantity, quality, kind of packages, or by any other circumstance, or mark. Nor is there any thing, which I have been able to discern, in the memorandum attached to the Delazvare policy, introducing a new subject of insurance; *488 a substance not before insured. How does it then stand ? “ The United States insures 10,000 dollars on goods at and from St. Bartholomexvs to Philadelphia on board any good Swedish vessel, Isaac Prince, or whoever else shall go foi master.” The Delaware the same sum, in the same terms. . It is not on board any vessel designated by name, nor to be navigated by any particular master; nor goods to be shipped by Isaac Prince, consigned to Ralph Peters. Some time after, the time of sailing is altered by a memorandum attached to each policy, with the addition to the Delaware policy, that it is on goods shipped by Isaac Prince, consigned to Ralph Peters, on board any Swedish vessel, or vessels. The goods being clearly protected by the general insurance of the United States, its comprehensive terms are not restricted by the confined and less extensive terms introduced by the agreement in the Delaware policy, nor affected by its extension to ships, instead of ship. It is not the case of two distinct insurances made on goods for the same person, on the same voyage, the one on board a specific ship, and the other on board any ship or ships. For then, if the former arrived safe, and the latter is lost, the assured shall apply the policy onboard ship or ships to the goods lost. Nor is it the case of two insurances for different sums, each on board ship or ships. Where the assured appropriates each policy to certain specific goods on board the respective ships, and one be lost, the underwriters on the policy appropriated to the goods on board that ship, shall alone be answerable. Marsh. 386. 2 II. Bl. 343. But if there be no appropriation of either policy to the goods in either ship, it would seem, that this ought to be considered but as one insurance on the entire goods by the two policies, and then the underwriters on both ought to contribute. Marsh. 381. Now, the memorandum does not strictly appropriate any specific goods, nor these 65 puncheons of rum; nor does it specify any particular ship, as here the specific ship Gustavia, Justus Arnold master. The only alteration made, in consequence of Princess letter of the 15th May, was the alteration to vessel or vessels, because he informed Mr. Peters, that the property might be sent in several vessels. In fact it does not appear, that the plaintiff was apprised of the purchase of these 65 puncheons of rum, or of the vessel in which they were to come. All that was contracted for by this new agreement was, that the goods should be *489 shipped by Prince, consigned to Peters, on board a Swedish vessel or vessels. Then the plaintiff had die two securities for this importation, to either or both of which he might resort, had it not been provided by the stipulation in the policy, that he should not resort to this company, if he had before been otherwise insured. But it is said, that the United States policy did not cover an importation of goods consigned to Ralph Peters, because in the order it is said, that the property was to appear Swedish, but not warranted, and its being consigned to Ralph Peters took off the mask and increased the risk ; that they would not be liable, but the Delaware would by their agreement, as they agreed that the mask should be taken off. I am willing to consider the case as if such clause had been in the bodies of the policies. Both companies knew, that the goods were either Mr. Peters's, or to come consigned to him. The consignment did not more take off this mask, than the policy in the name of Ralph Peters, and if it were so, the very act of insuring in the name of Ralph Peters would have the same effect. The very policy which required the mask would strip it off, uncover it, take off the appearance, the colour of the Swedish garb, and thus destroy the very requisition of false appearance. For it certainly was well known, that the property to be insured was the property, not of Swedes, but of American citizens, when the ship was warranted to be Swedish. In truth a consignment to Ralph Peters, an American citizen, by Isaac Prince, a Swede, would not be among the least likely ways of covering property as Swedish; and it was for this purpose, Mr. Peters became a Swedish burgher; at least for this purpose he was so employed. So far from this agreement defeating the covering of the property, it really gave it a cover. It was not goods shipped on account and risk of Ralph Peters, but goods shipped by a Swede, on board a Swedish ship, consigned to an American citizen. For who is a consignee ? It is he to whom goods are directed at the port of delivery. This agreement would not affect the clause respecting its appearing as Swedish property. Nay more, it would not afford any evidence, if it had been warranted as Swedish property, that it was American. For it was the natural mode in which Mr. Prince, a Swedish citizen, should direct his property, going to an American port, by a consignment to an American citizen. We are not treating of the fact, *490 but of the colour. This agreement is not at all inconsistent with the representation: both may stand together. The agreement did not wave the Swedish appearance. It left the policy, in that particular, according to its original frame, neither adding to, nor diminishing the representation of Swedish dress, nor had that been made a part of the policy. We shall go back to the question of one shipment, one adventure, a full value of interest on the same goods by the same man, by two policies.
The plaintiff did not know what would be the amount necessary to be covered. He believed, from the information he received from Isaac Prince, it would be about 20,000 dollars. He limited it at 20,000 dollars. So late as the time of sailing, so late as the 27th June, he continued the policy on that sum. He neither knew the amount, nor the ship by which the goods were to come; and this is the reason why an insurance on a ship or ships is legal. Marsh. 379. Nor does it make any difference, although the whole voyage was not the same in both policies: if the peril causing the loss was within the risque of the first policy. As in Rogers v. Davis, and Davis v. Gildart, Marshall, 147, the termini oí the voyage were not the same, and one policy contained an exception of American capture. The objection as to their being different voyages, was made, but not regarded, as sergeant Marshall states in a note to these cases ; Lord Manseield, in the latter case, which was for contribution, observing that the question seemed to be, whether the insured had not two securities for the loss which had happened ; an'd if it be so, there could not be a doubt but he might bring his action against either. He presumed this to be a case of double insurance. The difference as to the termini of the voyage, and exception of American capture notwithstanding. The case of the Columbia Insurance Company v. Lynch, 11 Johns. 233, decides only one point, that in that case the premium might be received by the underwriters on the second policy. The prior policy was effected in Philadelphia, the 27th September, 1811, on goods from Bayonne to New Tork; the second, the 5th October, on the same goods underwritten at New Tork, at and from Bayonne to the first port the vessel might make in the United States. The vessel arrived at New Tork in safety, but the goods were partially damaged. It was held that the underwriters on the New Tork *491 policy should recover the whole premium. The Court decided this on the ground, that the contract and the risk were indivisible, and it was impossible to form any rule of apportionment of premium. But what is directly to this point is strongly in favour of the defendants ; for it is said, that it must be .... , .... admitted, that the greatest part of the risk contained m the policy of the Columbia Insurance Company, according to the manner this voyage has been performed, is comprehended in the Philadelphia policy, and being prior in date, they are exclusively liable for the part assured by them. So here as the United States policy comprehended the whole of this voyage, being prior in date, they were exclusively liable for the whole. I contemplate these as two insurances on the same identical goods ; the voyage the same ; the owner the same ; the same goods. For we hear not of any other goods but the 65 puncheons of rum contained in the invoice of 29th May. The shipment was to be onboard any Swedish vessel. Strip these policies of the stipulation, could there be any doubt, but that the plaintiff had a double security, could resort to either1 or both, take but one satisfaction, leaving the matter of contribution among themselves.
Had there been no insurance by the Delaware, I cannot see the pretence on which the United States could found a defence. They could not say, we have not entered into this engagement of indemnity; for into it they did enter, and from it no subsequent agreement between Ralph Peters and them, or between Ralph Peters^ and the Delaware, has discharged them.
The Court, on the finding of the jury, decide only the question of double insurance. On a trial between the United States Insurance Company and Ralph Peters, they may make out a different case in point of fact, which may give rise to other questions of law. But on the case now before the Court, they are of opinion, that this is one of double insurance, and that judgment be entered for the defendants.
Judgment for the defendants.