# Stacey *against* The Franklin Fire Insurance Company.

The first insurance by a fire office was upon " merchandise generally, including liquors and groceries contained in store No. 37, South Wharves, for use of whom it may concern; say merchandise without exception." A second was made in another office on coffee and other merchandise without exception, either on board the J. S. in this port, or in the brick store, No. 37, South Wharves, in the city of Philadelphia. A loss happened, by fire, on goods in the store not brought in the J. S., or landed therefrom. *Held,* 1. That facts and circumstances out of the instrument are inadmissible to show the intention of the parties as to the second policy being a specific insurance on other goods not covered by the first. 2. That, as thus explained, there was not necessarily a double insurance, but the first might be on goods generally in the store, and the second on specific goods merely, brought in the J. S. or landed therefrom.

Where there is a clause in a policy of insurance, that persons at that office must give notice of any insurance *made* on their·behalf by the same, and shall cause such other insurance to be endorsed on their policy, in which case each office shall be liable to the payment only of a rateable proportion of any loss or damage which may be sustained, and unless such notice is given the assured will not be entitled to recover in case of loss, the condition applies to a subsequent as well as to a prior insurance.

If the second policy contain a clause that such insurance shall not be binding if the assured has made, or shall make, any other insurance on the same, unless the same be allowed of by said company, and specified in their policy, and then to pay rateably, such clause does not affect the first insurance, if the assured could not at any time recover on the second policy.

The assured's informing the second underwriter that there was a former policy

[Stacey v. The Franklin Fire Insurance Company.]

at another office, but adding it was on other property, would not, of itself, bring the case within this clause, nor would it be sufficient to make the second company responsible in an action.

*Quære?* Whether, in case of an insurance on fire on goods, with a clause stipulating for paying only a rateable proportion in case of another insurance, if the assured procures another insurance on the same risk, and the loss is less than the whole amount insured, he may recover the whole loss from the first underwriter, or only a *pro rata* payment from each?

THIS was an action of covenant brought by James G. Stacey and Davis B. Stacey, co-partners under the firm of J. G. & D. B. Stacey, against The Franklin Fire Insurance Company, in which the plaintiffs declared on the policy of insurance stated below, and the defendants pleaded covenants performed, with leave, &c. The case came on for trial before Kennedy, J., at a Court of *Nisi Prius*, held at Philadelphia on the 27th of November 1840.

The plaintiffs gave in evidence the following policy executed by the defendants:

" FRANKLIN FIRE INSURANCE COMPANY OF PHILADELPHIA.

*Office, No.* 163½ *Chesnut street.*

On Goods.　　　　　$10,000.　　　　　No. 88.

This policy of insurance witnesseth that the Franklin Fire Insurance Company, of Philadelphia, have received of J. G. & D. B. Stacey, $25 premium for making insurance (according to the tenor of their printed proposals and conditions hereunto annexed) upon *merchandise generally, including liquors and groceries, contained in store No.* 37, *South Wharves, for account of whom it may concern—*say merchandise without exception.*

Notice of a further insurance of $10,000 at the Pennsylvania Insurance Office, given this day, December 1st, 1829.

C. N. B., Secretary.

Now know all men by these presents, that in consideration thereof, the capital stock, estate, and securities of the Franklin Fire Insurance Company of Philadelphia, shall be subject and liable to pay, make good and satisfy unto the said insured, their heirs, executors, administrators or assigns, all such damages or loss which shall or may happen by fire, to the property above mentioned, from the day of the date hereof, to the full end and term of one year, not exceeding the sum of $10,000, unless the said company shall, within thirty days after the proof of such damage or loss, furnish the said insured with a like quantity of any or all of the said goods, and of the same quality as those so injured by fire, or shall make good the damage or loss, by paying therefor, according to an estimate thereof, to be made by arbitrators, indifferently chosen, whose award, in writing, shall be conclusive and binding on all parties. Provided, that if the premises

[Stacey v. The Franklin Fire Insurance Company.]

above mentioned shall, at any time when such fire shall happen, be, in whole or in part, occupied for purposes considered hazardous in the printed proposals and conditions hereunto annexed, unless liberty so to occupy them be expressly stipulated for in the manner prescribed in the note to Article XIII., this policy and every clause, article, and thing herein contained, shall be void and of no effect. Nor shall this policy have any force or effect, if assigned, unless such assignment be made within thirty days after the transfer of the property, and allowed by the company, agreeably to Article XI. of the proposals annexed.

It is agreed that this policy shall expire at twelve o'clock at noon, on the sixteenth day of October, in the year one thousand eight hundred and thirty.

Among the conditions of insurance annexed were the following:

II. Goods held in trust or on commission are to be insured as such, which may be done by inserting the words " for account of whom it may concern," otherwise the policy will not cover such property.

VI. Persons insuring property at this office must give notice of any other insurance made on their behalf on the same, and cause such other insurance to be endorsed on their policies: in which case each office shall be liable to the payment only of a rateable proportion of any loss or damage which may be sustained; and unless such notice is given, the insured will not be entitled to recover, in case of loss.

XIII. The following being considered hazardous risks, will subject the assured to a higher rate of premium: those, therefore, desirous of having the liberty of using their premises for such purposes, must have the same inserted in their policies, which otherwise will be void.

### Section I.

Apothecaries and Druggists,
Bottlers of Liquors,
Chandlers, Ship,
China, Glass, and Queensware, with
  liberty of straw for packing.

Corn and Grain,
Naval Stores, exclusive of Hemp,
Oils of all kinds, ready for use,
Paints and Colours,    do.
Prints, Picture and Looking-glass
  Shops.

### Section II.

Bookbinders,
Groceries and Liquors, with liberty
  of lawful quantity of gunpowder.

Lumber and Lumber-yards,
Printers' Types, Presses, and Utensils, and Stock generally.

### Section III.

Aquafortis in quantity,
Brewers and Maltsters,
Buildings unfinished,
Chemical Laboratories, and preparations in process,
Chandlers, Soap and Tallow,
Carpenters,

Cabinet and Piano-Forte makers, and
  Joiners,
Carvers and Gilders,
Coopers,
Chair Makers,
Coach and Carriage Builders,
Distilleries,

[Stacey v. The Franklin Fire Insurance Company.]

Flax and Hemp in quantity,

Factories, Mills, and Machinery, on a large scale,

Melters of Tallow, Wax, or other hazardous substances,

Oil and Varnish, Boilers of

Paint Manufacturers,

Rope Walks,

Ships and Boats, building and repairing,

Sugar Refiners,

Stables, public or private,

Spirits of Turpentine Distillers,

Taverns, Eating-Houses, and Oyster Cellars,

Theatres,

Turners,

Vitriol in quantity.

Note.—The liberty of dispensing with the restrictions in the foregoing article, may be allowed as follows :

For Sect. 1.—By inserting the words " merchandise generally,"

For all the Sections—(in part), by specifying the risk to be insured,—or wholly declaring it to be " an open policy."

### (Endorsed.)

Received March 26th, 1833, of the assured, eight dollars, in consideration of an additional assurance of $10,000, to expire July 6th, 1833.

C. N. Bancker.

No. 1747.

Received July 6th, 1831, of Messrs J. G. & D. B. Stacey, $20, for continuing this insurance for one year, ending at noon on the 6th day of July, A. D. 1832, for the sum of $8000. $5000 at present insured at the Pennsylvania Office.

C. N. Bancker, Secretary.

No. 3432.

Received July 6th, 1832, of Messrs J. G. & D. B. Stacey, $20, for continuing this insurance for one year, ending at noon on the 6th day of July, A. D. 1833, for the sum of $8000.

C. N. Bancker, Secretary.

No. 5261.

Received July 6th, 1833, of Messrs J. G. & D. B. Stacey, $22, for continuing this insurance for one year, ending at noon on the 6th day of July 1834, for the sum of $10,000.

C. N. Bancker, Secretary.
Per Chas. G. Bancker.

It was admitted that a fire took place on the 7th of January 1834, by which the store No. 37 South Wharves was destroyed, with its contents.

The plaintiffs then gave in evidence the following statement of their loss by that fire, which was admitted by the defendants to be a correct statement.

" Estimate of merchandise destroyed by fire, in store No. 37 South Wharves, on the 7th inst., and on which the sum of $10,000

[Stacey v. The Franklin Fire Insurance Company.]

was effected in the Franklin Fire Insurance Company of Philadelphia.

| | | |
|---|---|---:|
| E. B. ⎱ 214 bags Rio Coffee, imported per ship C. Bonaffe, estimated at 33,812 | | |
| T. D. ⎰ pounds, at 12½ cts. ................................ | $4226 50 | |
| 38 pipes Gin, estimated at 5529 gallons, at 50 cts................. | 2764 50 | |
| 5 bb'ls. do.　　do.　　175　do.　at 40 cts................. | 70 | |
| 43 bales Moss, 15,000 lbs. at 4 cts. ........................... | 600 | |
| 15 cases Champaigne wine, at $10 ........................... | 150 | |
| 3200 Ox and Cow's horns, at 8 cts. ........................ | 256 | |
| 7 half pipes Rochelle Brandy, 571 gallons, at $1 40 cts. ........ | 799 40 | |
| 1 pipe Old Madeira wine, 100 gallons, at $3 .................... | 300 | |
| 3 boxes　do.　　do.　9 dozen, at $12 .................... | 108 | |
| 8 casks and a quantity of loose Bones and Hoofs ......... | 130 | |
| 1 Ulage cask Sherry wine, say 20 gallons, at $1 25 cts. ......... | 25 | |
| 13 pieces Russia Duck, at $14................................ | 182 | |
| 1 Ulage pipe Old Rochelle brandy, 40 gallons, cost $1 80 cts. .... | 72 | |
| 67 boxes Old St Jago segars, at $8.......................... | 536 | |
| 1 box containing 2 canisters Vanilla Beans, estimated to weigh 34 pounds, at $7 ....................................... | 238 | |
| 2 boxes Natchitoches snuff, 22 bottles, c. $1 50 cts. ............ | 33 | |
| 6 Tarpaulins, cost $100, say worth ......................... | 75 | |

| | | | |
|---|---:|---:|---:|
| 1 coil new Hawser rope ................................ | $50 | | |
| 1 pair Guns and Carriages complete....................... | 50 | | |
| 12 Muskets, at $5 ..................................... | 60 | | |
| | | 160 | |
| 6 demijohns Brandy and Old Rum, estimated at 24 galls., at $1 50 | 36 | | |
| 1 tierce London porter, 6 dozen, at $2 50 cts. .............. | 15 | | |
| 1 basket Champaigne wine............................. | 10 | | |
| 3 boxes Claret, at $3................................. | 9 | | |
| 8　do.　Crab cider, at $1 87½ cts. ..................... | 15 | | |
| | | 85 | |
| 1 mantel Glass, $20, ship's store $10 ..................... | 30 | | |
| 2 Settees, sundry ship's Furniture, Carpets, Mahogany dining-table, Curtains, Casks, &c. ......................... | 170 | | |
| | | 200 | |
| A quantity of machinery, &c. stored with us for two years past, for which we had a claim for storage of .............. | | 100 | |

Counting-room Furniture, viz:

| | | | |
|---|---:|---:|---:|
| 1 large Mahogany desk, cost second-hand, $25, Astral lamps and other Lamps, $14 ............................ | 39 | | |
| 1 Mahogany desk, 1 do. table .......................... | 24 | | |
| 1 Carpet, $21, 1 long desk, $10 ......................... | 31 | | |
| 1 Clock, $12, 1 Stove, cost $17 ......................... | 29 | | |
| 1 large Book-case with 13 drawers, &c................... | 25 | | |
| 1 Looking-glass, $5.　1 large Map, and Charts, $30.　Check, and other books, stationary, &c. valued at $20 ......... | 55 | | |
| 1 box Spermaceti candles ............................. | 10 | 213 | |
| As far as ascertained, the sum is ...................... | | $11,323 40 | |

Errors excepted.

*Philad., January* 11th, 1834.　　　　　J. G. & D. B. Stacey.

From the above will be a credit for the damaged merchandise sold at auction.

*Philadelphia, January* 11th, 1834.

Franklin Fire Insurance Company, of Philadelphia, to J. G. & D. B. Stacey debtors, for the sum of ten thousand dollars insured

in said office against fire, on the above stated merchandise, as per their policy, No. 88, renewed number 5261, dated July 6th, 1833.
    $10,000 00

The plaintiffs admitted the receipt of the sum of $5400, paid to them by the defendants on account of this insurance, viz.: $4000 on the 23d of January, and $1400 on the 24th of January 1834, for which the following receipts were given:

"Philadelphia, January 23d 1834. Received from the Franklin Fire Insurance Company, $4000, being on account of their policy of insurance, No. 88, on goods destroyed at the fire on the 7th inst., in store No. 37, South Wharves — this amount being paid and received without prejudice to the rights of the insured or insurers, on the final settlement of the loss on said policy.
    $4000                                J. G. & D. B. STACEY.

"Philadelphia, January 24th 1834. Received from the Franklin Fire Insurance Company, the further sum of $1400 on account of their policy of insurance, No. 88, on the same conditions as the above receipt.
    $1400          .                      J. G. & D. B. STACEY."

And the plaintiffs here closed.

The defendants then gave in evidence the following policy of insurance, effected by the plaintiffs with the Insurance Company of North America; and which policy was produced by the plaintiffs on notice.
    "On goods.                            For four months.

By the president and directors of the Insurance Company of
                North America.

No. 17,040.

Whereas, J. G. & D. B. Stacey, have paid to the president and directors of the Insurance Company of North America,
        twelve dollars premium, for insurance of $15,000 on coffee
[L. S.] and other merchandise, without exception, either on board the
        ship John Sergeant, in this port, or in the brick store, No. 37
South Wharves, in the city of Philadelphia, from loss or damage by fire, whilst the said merchandise shall be and remain in the building aforesaid, for four months, to expire at 12 o'clock at noon of the 23d day of March 1834. Now know all men by these presents, that in consideration thereof the capital stock, estate, and securities, of the said corporation shall be subject to pay unto the said J. G. & D. B. Stacey, their executors, administrators, or assigns, any loss or damage which shall or may happen by or by means of fire to the said merchandise, within the term aforesaid, unless they, the said president and directors shall forthwith furnish the assured with the like quantity of merchandise of the same quality as those so injured by fire, or provided the said merchan-

[Stacey v. The Franklin Fire Insurance Company.]

dise shall be wholly destroyed by or by means of fire within the term aforesaid, then the said capital stock, estate, and securities of the corporation, shall be subject to pay the said J. G. & D. B. Stacey, their heirs, executors, administrators, or assigns, the entire sum of $15,000, which said loss or damage shall be paid or indemnified in manner aforesaid, within thirty days after proof of loss; and if any dispute shall arise respecting the same, between the corporation and the assured, such difference shall be submitted to the judgment and determination of arbitrators, to be mutually chosen by the parties, whose award in writing shall be conclusive and binding. But in all cases where partial losses or damages do occur to the property insured by this policy, within the period above stipulated, and afterwards a total loss of the same within the same period, whereby claims may arise to a larger amount together, than the sum hereby insured; the assured shall in nowise be entitled to receive more than the whole sum so insured, within the period for which the insurance is made. Provided always, nevertheless, and it is hereby declared to be the true intent and meaning of this policy, that the said stock, estate, and securities of the said corporation shall not be subject or liable to pay or make good the assured any loss or damage by fire which shall happen by invasion, foreign enemy, civil commotion, or any military or usurped power whatever; and provided also, that this policy shall not take effect or be binding to the said corporation, in case the assured shall have already made, or shall hereafter make, any other assurance upon the property aforesaid; unless the same shall be allowed of and specified on this policy, in which case this company will bear rateably, and no more, of any loss from the perils hereby insured against, which may happen to the said property in proportion to the several insurances then existing thereon. Or if the building above mentioned, containing the property of the said J. G. & D. B. Stacey, shall, at the time when any such fire shall happen, be in whole or in part occupied (with the knowledge or consent of the assured) by any person who shall use or exercise therein the trade of a carpenter, joiner, cooper, tavern-keeper or inn-holder, stable-keeper, bread or biscuit-baker, sugar-baker, ship-chandler, boat-builder, malt-drier, brewer, tallow-chandler, apothecary, chemist, oil and colourman, flax or hemp-dresser, printer, coach or carriage-maker, rope-maker, distiller, varnish-maker, or aqua-fortis manufacturer, or shall be made use of for the storing or keeping of hemp, flax, earthenware, or other merchandise, packed in hay or straw, gunpowder, spirits of turpentine, hay, straw, fodder of any kind, or grain unthreshed, unless so agreed to by the company, then in all or any of the said cases, this policy, and every clause, article, and thing herein contained, shall be void and of none effect; otherwise it shall remain in full force and virtue.

[Stacey v. The Franklin Fire Insurance Company.]

*Memoranda.*

1. Bills of exchange, bonds, notes of hand, and other written securities, title deeds, bank notes, specie or bullion, books of account, jewels, plate, medals or other curiosities, time-pieces, musical instruments, paintings, pictures and sculptures, are not insured, unless specified and agreed on by a clause to that effect.

2. The insurance by this policy can be effective, in case of loss, only as to the right which the assured named has in the property insured, unless otherwise explained and agreed to by the company.

3. This policy may be transferred by endorsement made with the consent of the company (but not otherwise), and the insurance continued from time to time without any additional expense (subject, however, to such modifications as circumstances may require), the premium for the renewed term being first paid.

In witness whereof, the said corporation have by their president subscribed the sum insured, and caused their common seal to be hereunto affixed at Philadelphia, on the twenty-third day of November, in the year of our Lord, one thousand eight hundred and thirty-three.

*For whom it may concern, and the*
*loss, if any, payable to the assured* } *Fifteen thousand dollars.*
*named.*

JOHN C. SMITH, *President.*

Dollars, 15,000, on merchandise, at 8-100. . . . 12 00
Pol. . . . 1 00
_____
Dollars. 13 00

And the defendants here closed.

The plaintiffs then offered James G. Stacey, one of the plaintiffs, as a witness, and gave in evidence an assignment, dated the 16th of June 1834, by J. G. Stacey to Davis B. Stacey, reciting a dissolution of the partnership between them, and conveying all his right, title and interest in the partnership effects, rights and credits to the said D. B. Stacey, *inter alia.* Also, a release, dated the 16th of June 1834, from D. B. Stacey to J. G. Stacey; and also a certificate by the prothonotary of this court, dated the 17th of June 1834, that J. G. Stacey had deposited the sum of $40, to cover the costs in this case.

The defendants objected to the admission of J. G. Stacey to testify, on the ground that he was still liable for partnership debts, and therefore incompetent to testify in a suit, the object of which was to increase the partnership fund; and also that he was liable to D. B. Stacey, on the assignment of this claim: but the learned judge ruled that he was competent to testify in this suit, and noted the objection.

II. — 65

[Stacey v. The Franklin Fire Insurance Company.]

Thomas Diehl was then produced on the part of the defendants, and testified as follows:

I am not a creditor of the firm of Stacey & Co. I have an interest in the coffee insured by the Franklin Office. I did not make any insurance. I was insured in Mr Stacey's policy. Have made no claim on insurance company. Have made no claim on Messrs Stacey. They have not paid me the proportion they received, nor any part of it. I had about $1600 originally, and sold part of it. When I bought the coffee, Mr Stacey told me they were insured. Don't know of any marked with my initials. I never got any part of it after fire. Understood it was burned.

Cross-examined — Have no claim on Messrs Stacey. Don't recollect in what year it arrived. Don't think it had been more than a year. It was destroyed by that fire in their store. Mr Stacey said they had a running policy; covered any goods in their store. Have spoken to some of the directors of the Franklin Office on the subject of the claim. I thought it had gone far enough to satisfy them. My motive was to get my money.

The defendants then, again, objected to the testimony of J. G. Stacey, on the ground of interest; but the testimony was admitted and the objection noted.

James G. Stacey having been called, the plaintiffs were asked what they expected to prove by him: whereupon the following written offer was read to the judge:—

" The plaintiffs offer to prove by James G. Stacey, a mistake in filling up the Policy of the Insurance Company of North America, as follows:

That on the 23d of November 1833, the day after the ship John Sergeant arrived from Rio de Janeiro, he applied to John C. Smith, Esq., President of the Insurance Company of North America, to effect insurance on the cargo on board said vessel, whilst that cargo should remain on board the vessel, and upon the same goods, or any part of them, which might be removed from the ship into the store, 37 South Wharves; and that he distinctly informed Mr Smith at the time, that J. G. & D. B. Stacey were fully covered for all the property then in said store, by the policy of the Franklin Fire Insurance Company.

That he further stated to Mr Smith, that he wished to protect the cargo of said ship, either on board, or if removed in whole or in part into the store, by a specific insurance on the goods composing that cargo, so worded as to guard against any risk, from its casual storage with articles considered extra-hazardous, and excepted by the usual conditions in policies against fire. That he then paid the premium demanded by the North America office.

In consequence, policy No. 17,040 was executed by said office, but that plaintiffs never saw said policy, nor was it taken from the office of the Insurance Company of North America, until after the fire of the 7th of January 1834.

They also offer to prove by him, that this insurance was specifically effected on that cargo of the ship John Sergeant, both to protect their own interests in that particular property, and those of their friends who had signed respondentia bonds with them, for the money borrowed and sent out to buy the cargo which came from Rio de Janeiro in the said ship.

They also offer to prove, that the cargo of said ship, at her arrival in Philadelphia, consisted of about 6000 bags coffee, and some other articles, valued at $120,000; of which plaintiffs owned 1034 bags coffee, worth about $20,000, on which they effected the above specific insurance of $15,000, not being certain that the whole would be landed; and, in fact, that a considerable part of their interest in the cargo of the ship never was landed here, but went out in the ship to New Orleans.

They also offer to prove what goods were in the store, 37 South Wharves, on the 23d of November 1833; and what part of the same goods were destroyed in the fire on the 7th of January 1834: what part of the cargo of the ship came into the store; and what part was destroyed by the same fire."

The testimony was then objected to on the part of the defendants; but it was suggested by the Judge that the testimony should be received *without* prejudice *to* the rights of the defendants, reserving the point for the opinion of the court: all objections to any evidence of a similar character offered, to be considered as reserved.

James G. Stacey was then sworn, and said, " I was a member of the firm of J. G. & D. B. Stacey. I gave the order for effecting the policy in the North America office. The order was in writing. I wrote the order in the office."

The defendants objected to any further examination upon this subject, until the order was produced.

The order was then produced and read, as follows :—

" *Philadelphia, November* 23*d,* 1833.

INSURANCE COMPANY OF NORTH AMERICA.

Insure $20,000 on the ship John Sergeant against fire for one month from this date, for account of the owners of said ship; any loss, payable to us—premium 28½ *cts. Also insure* $15,000 on coffee, and other merchandise, without exception, either on board of the ship John Sergeant, in this port, or in store No. 37 South Wharves, against fire for four months from this date, for account

$$\text{premium } \tfrac{8}{100}$$

of whom it may concern $_\wedge$ any loss payable to

Your obedient servants,

$\overline{\quad=\quad}$                    J. G. & D. B. STACEY.

$20,000 $\tfrac{2\frac{1}{2}}{100}$ ——— 17.039            ·      1833

15,000 $\tfrac{8}{100}$ J. C. S. 17.040

Prst.

(Endorsed) No. 17.039 }
                17.040 }
   *J. G. & D. B Stacey.*
   Directed to      John C. Smith, Esq.,
               Prest. Ins. Co. of North America.

The defendants then objected to any further examination of the witness in respect to what passed before and at the execution of the policy.

The learned Judge held that the witness was competent to testify as to the state of facts at the time of effecting the insurance, and as to what facts he communicated to the president of the N. A. Company.

The witness then testified as follows:—

"I called at the North America Insurance office on the 23d of November 1833, the day of the arrival of the John Sergeant. My impression is, that the ship arrived on Saturday, and I made the insurance on Monday. The marine policy on the ship was on time, and expired on her arrival. Insured the ship against fire for $20,000 for one month. We had on board the ship an adventure of 1034 bags of coffee. The whole cargo was 6000 bags. We owned $20,000. I went to the North America office for the purpose of insuring that against fire. On that coffee I effected insurance for $15,000; worth $20,000. I stated we had $20,000 worth of coffee on board the John Sergeant, and wished to insure coffee on board, or in the store, 37 South Wharves. [Objected to.] I had intended to put part in the store, and to ship part to New Orleans in the ship. I had made up my mind that part of the cargo was to be landed. At the time I effected this insurance with the Franklin Insurance Company in 1829, [reads policy,] the words were 'merchandise generally.' After receiving this policy from Mr Bancker for some time, we had hemp, and occasionally received goods in our stores at night. I took the policy to Mr B., and stated I wanted a clean policy, and he introduced the words, 'say merchandise without exception.' Mr B. made a small star *. The intention was to protect our goods from being stored with exceptionable articles. He said that would protect me from all goods, hazardous or not. There is a difference of premium. It would protect whether other goods or ours that were hazardous. I got these words for the North America policy from the Franklin. My intention was not to insure the goods already in store. They were already insured by the Franklin Company. [This was again objected to, but stated by the witness.]

There were other articles besides coffee, of no great value, on board the John Sergeant. The ship had not broke bulk, when I went to the North America office.

I suppose that we had about $10,000 worth of goods in the

store at the time of effecting the insurance in North America, and would not have insured, if it had not been for arrival of the John Sergeant. I hardly supposed the store could be burnt down without saving something out of it. No material increase in store. At the time of effecting the insurance in the North America, I stated to Mr Smith that I should ship part of the cargo of the John Sergeant, and wished to insure only $15,000; and that our other goods were already insured in the Franklin office by the year, but I wanted to protect the goods from the J. S. from being stored with the other goods. I told him I wanted a clean policy. He told me to draw the order to suit myself, and I drew it in this way. [Statement shown to witness.] I made this statement. This does not include any part of the cargo of the John Sergeant. 1st item, 214 bags of Rio coffee, by E. B., marked E. B. & T. D. The T. D. was Thomas Diehl's. Think the E. B. arrived in March 1833. Must have been three months after the John Sergeant sailed from Rio. No other goods of Mr Diehl's was in the store. He had no interest in any part of the cargo of the John Sergeant. I wrote down in a memorandum book fully at the time. [Memorandum book produced, and examined by the witness.]

There was destroyed by the fire, that came per the John Sergeant,

| | |
|---|---|
| 82 bags Rio coffee. | |
| 6 barrels do. | . . . . . . $1844 50 |
| 1 tierce do. | |

There were some other items extra cordage and iron-bound casks landed from that ship, . . . . . . $165 00

$2009 50

I made out a statement of these last $2009.50, which was claimed from the North America, and for which they have paid a certain amount, I believe $1900 or $2000. Don't recollect exact amount. Leaves a small balance. I stated the loss would be about that, and they gave me a check for the amount."

The witness then produced three invoices of coffee by the John Sergeant. 1034 bags.

Account current of Danl. Summers, supercargo of ship, with Messrs J. G. & D. B. Stacey.

All which were objected to by the defendants, but admitted by the Judge.

" I sold part of this coffee to Mr S. Etling. It was never landed, but shipped by him to New Orleans."

Cross-examined—" We were the owners of part of the ship. I think one-fourth at that time. The 1034 bags were ours, though they stand in the names of owners of ship, though for our account. The ship perhaps stood in the name of Bevan & Humphreys. I

[Stacey v. The Franklin Fire Insurance Company.]

cannot say whether we owned one-fourth or one-half of the ship.
The John Sergeant came from Rio Janeiro. She was here some-
thing like a month, and loaded for New Orleans, and went there.
Mr Diehl was interested in the coffee that was insured in the
Franklin office. Think he had about $800 or $900 at time of fire.
He has not been paid any part of the money that we received
from the Franklin office that I know of.

Have no personal knowledge of his being paid. I told him we
have a claim on the Franklin office, and if we recover he will be
paid. Several other individuals were interested in the same way.
A widow of one of the captains, Mrs Stone, has an interest in the
horns. Then there is a Captain Campbell, or the widow of Cap-
tain C. There is a house in Baltimore which has an interest in
the gin under the policy which has not been settled."

The plaintiffs closed here.

The defendants then gave in evidence the order-book of the
Franklin Fire Insurance Company, containing the following order,
which was admitted to have been signed by D. B. Stacey, one of
the plaintiffs.

| Date | Nos. | *To the Franklin Fire Insurance Company of Philadelphia.* |
|------|------|-----------------------------------------------------------|
| 1829 October | | Make insurance for the space of one year......against loss or damage by fire on *merchandise generally, including liquors and groceries, contained in store No. 37, South Wharves, for account of concern* |
| 16th | 88 | *whom it may ^*say merchandise without exception.* |

Sum to be insured, dollars 10,000 a 25 cts. per $100 . . 25
Expires Oct. 16th 1830.      Policy . . . . . . . . 1

                                                    ——
                                                    26

            (Signed)      J. G. & D. B. STACEY.

Also the following additional estimate furnished by the plaintiffs
on the 24th of January 1834:

"In addition to the estimate of 11th inst., there were broken and
destroyed by the fire about 339 burr blocks, estimated at $1.50
each, $508.50; the damage to those saved not yet ascertained,
probably $300 . . . . . . . . . . . . . . . . $808 50
1 trunk of silk buttons, value unknown.
Also received per ship John Sergeant, and in-
sured in North America office, 82 bags, 6
bbls., 1 tierce Rio coffee, say 82 bags, 158
lbs. nett each . . . . . . . . . . . . 12,956
6 bbls. 200 lbs. . . . . . . . . . . . . 1,200
1 rice tierce . . . . . . . . . . . . . 600

        At 12½ cts. per lb.   14,756   1,844 50

                                      $2,653 00"

[Stacey v. The Franklin Fire Insurance Company.]

Endorsed—

" 24th January, 1834, further estimate of **J. G. & D. B. Stacey.**"

Also certain policies of insurance effected by the plaintiffs and produced by them on notice, viz.:

1829, June 27, with the Pennsylvania Fire Insurance Company . . . . . . . . . . . . . . . . . .     $900
Same date, with the same . . . . . . . . . .     $2,500
1829, December 1, with the same . . . . . . .     $10,000

" On merchandise generally, without exception, in store No. 37, South Wharves, for whom it may concern;" and containing the following endorsement:

" January 9, 1830.   Notice of $10,000 in addition by Franklin Fire Insurance Company, for one year from the 16th of October, 1829."

The defendants then offered in evidence the following policies of insurance, for the purpose of proving that insurances had been made in different offices, of goods in different places, for the same premium as if in one place, viz.:

1826, December 1. *North America Insurance Company* to *Richard P. Foulke.* $8000 for one year; premium $20; " on merchandise contained in the lower story and cellar of the three-story brick-house, situate on the south side of Market street, east of Eighth street, and in the three-story brick store on the rear of said lot fronting on a court."
Continued to December 1, 1829.

1829, October 17. *Franklin Fire Insurance Company* to *Lincoln & Ryers.* $8000 for one year; premium $20; " on merchandise, without exception, contained in the brick stores and cellars No. 33 South Wharves, and No. 59 South Water street; also in cellar No. 63 Water street, for account of whom it may concern."

1831, August 5. *North America Insurance Company* to *Thomas & Martin.* $25,000 for one year; premium $50; " on merchandise generally, for account of whom it may concern, contained in a brick store situate on the west side of North Front street, designated by No. 10, and in a warehouse in the rear thereof, in the city of Philadelphia;" with a notice that " $25,000 are insured on said merchandise by the Franklin Fire Insurance Company of Philadelphia."

1831, August 5. *Franklin Fire Insurance Company* to *Thomas & Martin.* $25,000 for one year; premium $50, on the same as the last.

1836, January 18. *Franklin Fire Insurance Company* to *Thomas & Martin.* $4000 for one month; premium $4; " on 40 bales

of domestic cotton goods in buildings either at Frenchtown or Newcastle. For account of whom it may concern."

1836, July 29. *Pennsylvania Fire Insurance Company* to *Thomas & Martin.* $12,000 for one year; premium $24; "on merchandise generally, contained in a brick store, No. 10, North Front street, and in a brick warehouse in the rear thereof; for account of whom it may concern."

> "$25,000 insured at the North America office.
> $13,000    "    "    Franklin Fire."

1837, April 20. *County Fire Insurance Company* to *Thomas & Martin.* $20,000 for one year; premium $40; on the same as the last.

"$25,000 insured in the North America Insurance Company," &c.

1839, December 16. *American Fire Insurance Company* to *Thomas & Martin.* $25,000 for one year; premium $55; "on dry goods by wholesale, either their own, or held by them on trust or consignment, in a brick store, No. 10, North Front street, and in the brick warehouse in the rear thereof," &c.

Also two policies in favour of Waln & Leaming.

These policies were all objected to by the plaintiffs, (who admitted that they were duly authenticated), and rejected by the judge.

Charles N. Bancker sworn. "On the morning of fire Mr J. G. Stacey called at the office to inform us of the fire, though we were previously apprised of it. Immediately on entering into conversation, his first question, or very shortly after he came, was whether or not he had given us notice of the insurance in the North America—that he had recently made an insurance there of $15,000, and wished to know if he had given us notice of such insurance. I referred to such books as if he had, it was probable we could find notice, and found no notice of the kind had been given that we had taken special note of. Desirous, however, to ascertain if notice might not have been given by written communication, I looked over the letters, having ascertained from Mr S. the date of the insurance, viz., latter part of November. I found no note from the house to this effect. Supposing Mr Stacey was anxious on the subject, I gave him the assurance that the office would take no advantage of the omission or neglect, but would consider it the same as if notice had been given; that we had paid a loss under these circumstances. I ascertained from Mr Stacey that he had not possession of the policy of the North America, nor had he seen it. I then asked him how the North America stood in relation to the insurance effected at the Franklin. To which Mr Stacey replied in emphatic language, that Mr Smith could not take

advantage of want of notice, for he had at the time of making the insurance there apprised Mr Smith of the insurance of $10,000 at the Franklin. That the loss to be borne by the Franklin would be two-fifths, or as $10,000 to $15,000—the whole amount of insurance being $25,000. Other persons came in during latter part of conversation.

No distinct recollection of any thing else bearing on this, except that he said the loss would be *pro rata*, as $10,000 to $15,000. In the course of the same day Mr J. C. Smith, president of the North America Company, called and spoke of the insurance by the North America being $15,000 in co. with Franklin $10,000. He called to know if we would unite in taking care of the property, and would bear a *pro rata* of the expense of taking charge of the remaining property. Some property yet to be taken care of. He called to know if we would bear our proportion; to which I assented. This was on the day of the fire. Subsequently (probably the same day), I called at the North America office (had been to look at the fire), to have some conversation with them. Saw several gentlemen there—don't know if directors—can't say if I saw Mr Smith: they were not disposed to enter into discussion. —Board, perhaps, on eve of meeting. Rather unceremonious. Left there almost immediately. Never had any conversation with them since on the subject, and no direct communication. On the same day, or the following day, Mr Stacey called again at the office. I understood him to say, that in the interim he had seen his order or the policy with the North America Company, and that, according to his view of the policy, his views were somewhat different. That he did not think we were on any coffee at all in the store. That his construction of the policy was, that all the coffee in the store, not only that landed from the John Sergeant, but that by the E. B. was all exclusively insured in the North America office, and that our loss would be considerably reduced— less than the two-fifths as supposed. That we were also interested in the remaining part in the store, and as to them joint insurers with the North America Company. At the time I did not know the terms of the N. A. policy. Had not seen that policy. No recollection of having any distinct conversation with Mr Stacey further at that time. Fire took place on the morning of the 7th. Conversation on that day and part of next. On the afternoon of Saturday, the 11th, I received from Mr Stacey a document purporting to be their demand for the loss sustained by the fire (that paper has been produced here), claiming the full amount insured, viz. $10,000, or total loss. The Board was to meet on Monday. At the meeting of the Board I stated to them, &c. (stopped). In consequence of that meeting one of the gentlemen got the policy of the North America Company. After reading the policy, saw Mr Stacey shortly after. Told him I considered his first impressions were *correct* — that we were joint insurers, having waived

[Stacey v. The Franklin Fire Insurance Company.]

the penalty which we only used in case of fraud. I understood Mr Stacey to say that the North America Company took a different view of it. Told him I thought it embraced a very important principle, in which the insured were more interested than the insurers; and asked him, if the policy of the North America Company had expired, and the cargo of the John Sergeant in store, and a fire had taken place, whether he would not consider the Franklin office liable? He said he should, of course. I then stated again — suppose there had been no insurance in the North America office, and the John Sergeant and E. B. cargoes had arrived in the store, if he would not have considered the John Sergeant's cargo insured in the Franklin? He said he would. I reversed the question also to Mr Stacey, that if under the circumstances the coffee by the John Sergeant only was burnt, and nothing else, the Franklin would not have been bound to contribute; and I offered to pay Mr Stacey the full amount of the claim, viz. $10,000, if the North America Company would agree not to take advantage, &c.; our object being to give every facility. Many conversations took place—all very amicable. No apparent desire, on the part of Stacey, to take advantage. He told me he would see Mr Smith, and ascertain—probably he would agree to it. I saw Mr Stacey afterwards. The North America Company would not do any thing. I then told Mr S. that it was an important question, and I would take legal advice whether we could pay this $10,000 without prejudice, without agreement of the North America Company. We took advice of counsel, and were told that we could not safely pay. Told Mr Stacey this. Under these circumstances we agreed to pay Mr S. two-fifths at once, which we did, viz. on the 23d of January we paid him the two-fifths. Mr Stacey said, assuming that, there would be a further estimate to be made—for the statement of loss. On the following day he presented the further estimate. That that was about $3500. We paid him however here two-fifths of that amount — making $1500 additional or two-fifths of the total amount of loss sustained. Mr S. said it was a very hard case, that being fully insured they should suffer from these joint liabilities. I felt for their case, and proposed another mode, viz. to lend them the $4600, the difference, and supposed we could do so. He brought a note of Bevan & Humphreys, I think, for the amount. Having consulted counsel, we were compelled to decline discounting the note; we were told that we could not safely do it without concurrence of the North America Insurance Company, which they refused to give."

The defendants then offered to prove Mr Stacey's information in respect to the practice of insuring goods in different places for the same premium as in one place, by proving that he had effected insurance in the same way previously.

Also to prove by orders in the books of the Franklin Fire Insu-

rance Company, that the plaintiffs had insured goods in two places in one policy.

Also to prove by Mr Bancker that he had insured for Messrs Stacey goods in different places for the same premium.

All which were objected to, rejected, and the points noted.

Mr Bancker was then recalled and testified,

" I was a merchant for many years, and secretary and president of the Insurance Company for about eleven years. I am acquainted with usage as to insurance. It has been the practice of the North America, the American, and the Pennsylvania, and also of the Franklin office, to insure goods generally in different stores for the same premium as in one store. I have considered it objectionable, and so stated, but it was kept up until the great fire in Front street, in October 1839, when the practice, I believe, was discontinued. Several of the companies were in different stores at the same time, and were involved in two risks — not double the amount named in the policy.

I recollect the application for the insurance by Messrs Stacey on these goods. One of the Mr Staceys applied for insurance on merchandise generally, which embraced only one of the exceptions in our policy. I wrote the order out myself. That was 22 cents rate of premium on such articles; 20 cents lowest rate. Office recently established, and we were following the practices of other offices. Mr Stacey (can't say which) in consequence of our stating that 25 cents would cover merchandise without exception — in the accepted sense of those terms — from the commencement of the office to this time — without exception covering all goods, hazardous or not—hemp, saltpetre, &c.; I had written the greater part of the order out, and before the signing the order by him, he concluded to pay 25 cents, and have " merchandise without exception;" and this was before signing the order. The asterisk (*) was put before Mr Stacey signed. The words " for account of whom it may concern," added. Probably on the afternoon of that day, or the next afternoon, the policy was filled up. The policy was copied by a person employed for a short time in the afternoon. He copied it literally. If I had been there, it would have been written out in consecutive order. Our practice is to insure more loosely than in New York. The person who filled up the policy is not here now; believe he went to Canada. We are in the habit, if any alteration is made in a policy after execution, to have it endorsed, and the signature of the party to it. If merchandise generally, the premium would have been 22 cents. In this case 25 cents for merchandise without exception, and we have not varied from that to this day. Not an unusual thing for a person to have goods *in transitu* — goods on board vessel and in store. So merchants removing; we are sensible of additional risk —any articles. A merchant having $50,000 in each store, we give him privilege."

[Stacey v. The Franklin Fire Insurance Company.]

Question by Judge Kennedy. Suppose he had $50,000 in each of two stores, would you insure for same premium?

Witness. "We have done so. There was the case of Waln & Leaming, who were insured in Front street, and Taylor's alley. We agree to it to accommodate merchants."

Cross-examined — "I was present when J. G. S. was examined as a witness, before arbitrators. I was examined also. I remember his then stating that the policy was altered, and I did not contradict it. I applied to Mr W. and Mr Chauncey to do so, and they thought, as there was no argument before the arbitrators, it was not necessary. I offered to testify. Don't recollect dates. Did make notes as to dates. We have effected insurances from 20 to 25 cents. We have insured extra hazardous risks for 20 cents under peculiar circumstances.

Question. "If goods were insured on a ship and in a store, would other goods in the store be covered?"

Answer. If like that of the North America, it would cover goods in the store. It would depend on the wording of the policy. If on *the* coffee by the John Sergeant, it would cover only that. The conditions annexed to the policy of the Franklin Insurance Company are copied from other policies. I consider them too loose. I think on the former occasion I was examined before Mr Stacey in point of time. I was present, I think, during the examination.

D. Henry Flickwir sworn. I was present in the Franklin office between 1 and 2 o'clock of the day of the fire. Mr Stacey was sitting with Mr Bancker when I came in, and I heard him (Mr Stacey) state that there was $15,000 insured in the North America office, and also $10,000 insured in the Franklin. I also heard him say that the loss to the Franklin would be merely two-fifths, or pro rata. Heard him distinctly say pro rata. He went away while I was there. Mr Bancker requested him to have a statement of loss as soon as he could prepare it.

Mr Bancker was then recalled by the plaintiff.

Mr Stacey did not make the second statement as a claim, but to enable us to ascertain what two-fifths of the whole loss would be. It was so far presented as a claim, that we were to pay on that according to our construction. He did not say that our construction was not his, but that the North America so construed it. I said what is stated before the arbitrators, connected with other circumstances; that it was not presented as a claim if the whole was paid, but was, if an alleged two-fifths only. I do not remember that it was said that it was not to be used to prejudice the Staceys, but it may have been so said.

The defendants again closed.

J. G. Stacey, recalled by the plaintiffs—I recollect the second statement. Mr Bancker declined paying more than pro rata, or two-fifths of the whole loss. After payment of the first $4000, said he would pay us as $10,000 to $25,000. Requested me to

make out a statement of the whole loss. I said I would not agree
to amalgamation. Said he wanted a memorandum to show the
directors that he had paid correctly. I gave it to him without sig-
nature. It was clearly and distinctly stated that it was not to be
used in evidence, but merely to show directors. Remember con-
versations with Mr Bancker. On the morning of the fire, stopped
at the office on the way down, to obtain information as to custom
in regard to disposition of property. Stated fire, &c. He asked
what amount would probably be destroyed. I replied, probably
about 13 or $14,000. He remarked that they were insured only
10,000. I said I had insurance at the North America for $15,000
on coffee. Said they had no notice of any such insurance. Re-
ferred to a small book. I stated that I had given Mr Smith
notice of the insurance at the Franklin office; of other property
insured at the Franklin office. Mr B. then said that Mr Grant
and Mr Wagner were committee for that district, and referred
me to them for further advice, &c. He stated at the same time
that want of notice would make no difference to the Frank-
lin company. I then left him, and on my way recollected that
the insurance in the North America was specific on the cargo of
the John Sergeant; and, after searching among my books and
papers, and not finding the policy, I called at the North America
office in the afternoon, and there received policy on ship and cargo.
Then went up to Mr Bancker, and found the office closed. Did
not see him that afternoon, but saw Mr Grant same afternoon,
and stated it to him. Next morning proceeded up to Franklin
office, and on my way met Mr Grant, and he returned with me
to the office. Mentioned to Mr Bancker what I had told Mr
Grant, and he said that Mr Grant had told him so before—this
was 8th of January. Mr Grant assisted in the disposal of the pro-
perty, and I was governed by his advice and direction throughout.

Arthur G. Coffin, affirmed on *voir dire.* I am a stockholder of
the North America Insurance Company.

The witness was then objected to by the defendants, but admit-
ted by the court to testify, and the objection noted.

Affirmed in chief—I have been nearly nine years connected
with the insurance company—secretary of Insurance Company
of North America. I was for many years connected in business.
Came here about 19. Went into counting-house. I am 40 now.
Acquainted with the usage in fire policies.

It is certainly not the usage to take risks on goods in two or
more stores at the same premium that you would take in one
store, unless the amount in each store is specified, in which case
it would make a difference. The premium would be larger in the
case I have mentioned.

It is usual to insure the same cargo in both ship and store,
while discharging, at the same premium; on the same principle,
that, while goods are removing, it is the universal rule to insure

[Stacey v. The Franklin Fire Insurance Company.]

both, and while in transitu, at the same premium. Not aware of any change in the practice. Can't speak positively as to time before the last nine years.

Merchandise without exception. We make no difference as to premium in the case of a commission merchant or grocer, and I believe the other offices do not. I know that the Messrs Staceys were commission merchants in 1833–4, and that there would have been no difference.

Cross-examined—In June 1832, elected secretary. If $50,000 is insured in one store, in one street, or in another store, extra premium is charged if you intend to cover both stores. But if the same property in both, not extra risk. The North America has not insured at the same premium in two stores the same amount.

A policy shown to him.

This policy was made out by me. It is in favour of Waln & Leaming. $50,000, merchandise generally, contained in brick store, No. 28, South Front, premium 20 cents. Unusually low. Endorsement. Notice is given that part of the property removed to store of Mr Arrott, South Front, and it is agreed that this policy shall cover the same. 2d Endorsement. That goods removed to alley, &c., and approved by the Franklin company. Where the sum insured is equivalent to the aggregate amount in the two stores, the premium is the same, where agreement was that amount should not be increased. Where insurance for $50,000 on two stores, and loss on one to extent of the insurance, the insurers would be bound to the extent of the $50,000, and no more—certainly not beyond the $50,000. Merely speak of my impression. Our premium would be on $50,000, whether in one store or in two. It is not our custom to take it, unless the amount is specified in each store. We may have done so in some instances, but not generally, to save trouble, unless it is the same property. (Policy shown to witness.) There was additional insurance made, by the Franklin and Pennsylvania, according to the notice endorsed on this. Of course, there was a joint liability on our part to those offices, according to these endorsements.

(In chief again.)

Of course the office is liable where notice is received. *Pro rata*, according to policy.

Mr Stacey recalled by plaintiffs.

Mr Grant and Mr Wagner were appointed committee of consultation. I engaged carts, removed rubbish, &c. Part of the coffee put in Mariner's church, in rear of store, and packed in tierces, and afterwards sent to auction store and sold.

All the coffee saved was of the E. B. Part marked E. B. and part T. D. Mr Grant said the Mark T. D. stood for Thomas Diehl. I replied that he was interested in the cargo. On the 11th of January I had my statement against the Franklin made out.

At the time I called at Franklin office, I had been very much exposed to the weather. I spoke without reflection. The word *pro rata* was not used on that day.

We received proceeds of sale of coffee. Our loss was greater than the amount insured.

After my statement Mr Grant called on me and asked to see the North America policy.

Account sales, by Lippincott & Richards, produced:

| | | |
|---|---|---|
| 10th January, . . . . . . . . . . . . . 1st | $509 | 43 |
| 14th　" 　. . . . . . . . . . . . 2d | 53 | 46 |
| | $562 | 89 |
| From that we deducted expense, . . . . . . . | 160 | 42 |
| Leaving balance, . . . . . . . . . . . . . . | $402 | 47 |

I am not sure whether I gave the North America policy to Mr Grant or handed it to Mr Bancker. I said that they should have it as a matter of courtesy, and not of right, as it was on specific property. It was returned to me shortly afterwards by Mr B. He said that the Franklin considered it as *pro rata*. I told him such was not my intention at the time of effecting the insurance. That I could not, in good faith to Mr Smith, make a claim on any other than goods by the John Sergeant. Mr B. said that if Mr S. chose to give such policies, he had a right to take advantage of it. I told him I should not do so; but if the Franklin wished it, and would pay, I would transfer the policy, and they might bring suit against the North America. I also stated to Mr B. that I regretted their loss so great, &c. Frequently had much less amount. Repeatedly made application for payment of balance, without effect. Called personally on directors. Understood that they agreed to discount note. Gave Mr Grant B. & H.'s note, &c. Returned and stated that they would only discount the note on condition of its being left to three lawyers; and I declined, as I had insured without their aid. At no time after first interview did I state to Mr B. that I had any claim on the North America. I told them they were not on the coffee by the John Sergeant, but by E. B.

From the second day after the fire I have had but one opinion, and expressed it. Called at the North America, and they declined entering into the arrangement proposed, as their policy was distinct.

Told Mr B. why I could not make claim — that I had informed Mr Smith.

Cross-examined — " The conversation with Mr B., in which I said that I could not call upon Mr Smith, was after the statement — after the 11th of January. No recollection of having been there more than twice before the 11th of January. No recollec-

[Stacey v. The Franklin Fire Insurance Company.]

tion of having said to Mr Grant that the Franklin office was not on any coffee. Was not present at examination of Mr Grant. The amount at the time of insurance in the North America, viz. 23d November, was between $1300 and $1400 more than at time of fire.

(Again in chief.)

It was on the 11th of January that Mr Grant made the examination.

The coffee by the E. B. was there at the time of the renewal of the policy in the Franklin office.

The John Sergeant arrived on the 23d of November, and cleared the 23d of December.

The plaintiffs then offered in evidence certain letters between the plaintiffs or one of them, and the secretary of the Franklin Fire Insurance Company; which correspondence was objected to by the defendants, but admitted by the Judge, who noted the objection.

The correspondence was then read to the jury.

The plaintiffs having again closed, the defendants again called Mr Flickwir to testify what was said respecting *pro rata* by Mr Stacey; but his testimony was objected to, and rejected.

Mr Bancker was then again called, and testified as follows:

It was sometime after the 14th that Mr Stacey stated that he had altered his mind as to the policy of the North America. On the 7th he stated that we were *pro rata*. On the 8th that we were not on the coffee.

The committee were appointed on the 13th, the day of the meeting of the Board: Messrs Grant and Wagner. There had been no meeting of the Board after the first until the second Monday in the month.

Cross-examined — Mr Grant volunteered to Mr Stacey to act. Mr Wagner did not act at all. Mr Grant did act before. No recollection of having authorized Mr Grant—but think it very probable. Did not see Mr Grant till after I saw Mr Stacey. Mr Grant told me that Mr Stacey told him we were not on the coffee at all. Mr Stacey confirmed it on the same day, and said he was glad our loss would be so light. Don't think I saw Mr Grant on the day of the fire at all. Don't recollect saying before arbitrators that I did see him on the day of the fire.

Beaton Smith sworn on the part of the defendants. I am secretary of the Pennsylvania Fire Insurance Company. I am acquainted with the usage respecting the insurance of goods in distinct buildings. It has been done frequently by the office of which I am secretary, *i. e.*, insuring in distinct buildings same goods, same sum for same premium. I have understood that it has been done in other offices, in cases in which our office has had a risk with them. We insured for Waln & Leaming. This is our policy of 15th February 1837. I have always understood it

as the practice to do so till within a year or eighteen months. It has been altered a year or eighteen months. The policy of insurance I have is on merchandise generally in the brick stores No. 28 and 35 South Front. Altered afterwards to Kelly & Field's store, and afterwards to store in rear of Taylor's alley. Amount $50,000. Premium $100 for one year. Insurance in Franklin, and North America endorsed thereon.

The defendants then offered to prove what was sworn to by Samuel Grant on a former trial of this case, the said Samuel Grant having been then called by the plaintiffs, and having then been and being now a stockholder of the Franklin Fire Insurance Company; but the same was objected to and rejected.

The learned Judge charged the jury as follows:

This is an action of covenant, as you have heard, brought by James G. Stacey and Davis B. Stacey against the Franklin Fire Insurance Company, on a policy of insurance, subscribed by the latter on the 26th of July 1833, in consideration of a premium of $22, paid by the former, against fire, to endure for one year from the date mentioned, upon " merchandise generally, including liquors and groceries, contained in store No. 37 South Wharves, for account of whom it may concern—say merchandise without exception." Among the conditions to which this policy was made subject, the sixth is in the following words: " Persons insuring property at this office, must give notice of any other insurance made on their behalf by the same, and shall cause such other insurance to be endorsed on their policies; in which case each office shall be liable to the payment only of a rateable proportion of any loss or damage which may be sustained; and unless such notice is given, the insured will not be entitled to recover in case of loss." On the 7th of January 1834, as appears from the evidence, merchandise, such as is mentioned in the policy, to the value of between $13,000 and $14,000, was destroyed by fire in the store No. 37 on the South Wharves. The plaintiffs, therefore, claim to recover, as for a total loss, the amount of the policy, which is $10,000. The defendants, however, deny that they are, or ever were, liable for this amount; because, as they say, and contend, they have shown that the plaintiffs, on the 23d of November 1833, effected a policy of insurance, against fire, for $15,000, with the North America Insurance Company of Philadelphia, upon the same goods in the same store, for the period of four months then next ensuing, in consideration of a premium of $12, paid by them. That, consequently, according to the sixth condition already recited, which is to be considered as part of the policy sued on, the defendants at most, upon the happening of the loss by fire, became responsible for only two-fifths of it, which is the proportion that the amount of the policy subscribed by them bears to that subscribed by the North America Insurance Company. That, accordingly, in discharge of all that the defendants thus conceived themselves

[Stacey v. The Franklin Fire Insurance Company.]

liable to pay, they, on the 23d and 24th of January 1834, a few days after the destruction of the goods by the fire, and previously to the institution of this suit, paid to the plaintiffs $5400, being a sum equal at least to two-fifths of the whole loss; which is all, as they allege, that they were liable or bound to pay. The payment of these $5400 is admitted by the plaintiffs; and agreed by the parties to have been made and received without prejudice to the further claim of the plaintiffs. But the plaintiffs deny that the policy which they effected on the 23d of November 1833, with the North America Insurance Company, covered any portion of the goods in the store No. 37 South Wharves, at that date; and allege that it was intended to protect the goods alone, which they then had on board the ship John Sergeant, and which had been imported by them in her. In short, that it was a policy of insurance against fire, on the specific goods imported by them in the John Sergeant, for the space of four months, and for which the North America Insurance Company were to be answerable in case of a loss thereof by fire, either on board the ship, or in the store, during that period. The question, then, which seems to present itself here is, were the goods in the store No. 37, on the South Wharves, and included in the policy subscribed by the defendants, also included in the policy subscribed by the North America Insurance Company? The description of the goods in this latter policy is in the following words—" on coffee and other merchandise, without exception, either on board the ship John Sergeant, in this port, or in the brick store No. 37 South Wharves, in the city of Philadelphia." Subjoined also to the same, at the foot thereof, are, in manuscript, the following words—" For whom it may concern; and the loss, if any, payable to the assured named." Upon the construction that ought to be given to this policy, and that on which this action is brought, depends the answer that ought to be given to the question raised here. And if nothing were to be taken into view in construing these policies, except what has been reduced to writing in them, then the question presented would be purely one of law, and such as the court ought to solve. But it is conceived that certain facts and circumstances have been testified to by witnesses adduced for the purpose, which may have some bearing upon the answer which ought to be given to the question raised; and that being the case, it must be referred to you, gentlemen, to be answered as you shall find the facts connected with the procuring of the policies to be in favour of, or against, the claim of the plaintiffs. But I have been requested to instruct you as to the legal effect of these policies, leaving the parol evidence out of view altogether; and this I will proceed to do in the first place. As to the policy effected with the Franklin Insurance Company, it is clear, from the terms of it, that it was intended to embrace merchandise generally, such as coffee, &c., which might happen to be destroyed by fire in the store No. 37, on the South

Wharves, at any time during the year for which it was effected; no matter where the property came from, whether from on board the ship John Sergeant or elsewhere, as soon as brought into the store. Hence, had the coffee on board of the John Sergeant been brought into the store, this policy would, thereupon, have immediately applied to it, as well as to any other article of merchandise in the store, notwithstanding the policy with the North America Insurance Company had been effected previously; and consequently, had it been destroyed by fire there, the Franklin Insurance Company would have become liable to pay a rateable proportion of the loss, at least, with the North America Insurance Company.

Next, as to the legal effect or true interpretation of the policy effected with the North America Insurance Company, expounding it by its own terms, or the language used in its concoction, without regard to extraneous circumstances, or facts not appearing on the face of it. It is agreed that the store No. 37, mentioned in this policy, is the same as that mentioned in the policy of the Franklin Insurance Company. And upon the face of both these policies it appears that they were effected " for whom it may concern;" that is, for the benefit of the owners of the goods, whoever they might be, in the store and keeping of the Messrs Staceys. In this particular both policies are alike. Then as to the kind of goods mentioned in the North America Insurance Company's policy, the words used therein for specifying them, being " coffee and other merchandise, without exception," are very comprehensive, and sufficient to embrace every species of goods mentioned in, and embraced by, the Franklin's policy; so that here again the two policies are alike.

Now we come to the remaining words in the North America policy, indicative of the places where the goods were or should be, on which the policy was intended to operate. These words are—" either on board the ship John Sergeant, in this port, or in the brick store, No. 37 South Wharves, in the city of Philadelphia." Here we have two places mentioned instead of one, to wit, the ship John Sergeant, or the store No. 37; the latter alone of which is mentioned in the Franklin policy. According to the common and generally received acceptation of these words, the idea conveyed thereby would be " coffee and other merchandise," in either of those two places at that time, or at any future time during the four months. But it is contended that this could not have been intended by the parties; because, in effect it would be an insurance for $15,000, on coffee and other merchandise, in each of the places, for the same premium paid only, that would have been required for an insurance of the same amount of goods of that value in one only of the places. And although this may be the natural import of the words, yet it is said that because it is unreasonable, it is therefore proper, at least, if not necessary, to

[Stacey v. The Franklin Fire Insurance Company.]

vary the natural meaning of them somewhat, so as to give to the clause containing them a more reasonable and just operation; and that this may be done by construing it an assurance " on *the* coffee *then* on board the ship John Sergeant, for the space of four months thereafter, whether it remained on board the ship, or should be removed into the store No. 37." It is argued also, that the disjunctive conjunction " *or*" being employed to connect the ship and the store, in the clause under consideration, renders this construction proper, and distinguishes it from the case of such connexion being formed by the use of the conjunction " *and ;*" as, for instance, if the policy had been for $15,000 on coffee and other merchandise, on board the ship John Sergeant, *and* in the store No. 37 South Wharves. It appears to me, however, that the effect of the policy in either form would and ought to be the same, if the fact be that the assured had coffee or other merchandise in, each place mentioned, at the time, equal in value to the $15,000 ; for in case of a loss of the whole of the goods contained in either place by means of fire, within the four months, the $15,000 would have to be paid, whether the word " or" or " and" were used. And the use of the word " and" in such clause does not negative the fact of there being goods in each place mentioned, of equal value with the amount of the policy; nor does the use of the word " or" in such case directly or positively affirm it; so that without the aid of parol evidence proving the facts and circumstances attending the execution of the policy, and the occasion of its being obtained, it cannot be considered a policy on specific goods in either case ; that is, whether the word " or" or " and" be inserted. It is true, that on a former trial of this cause, I inclined to the opinion that the North America policy was intended to be on specific goods, to wit, the coffee on board the ship John Sergeant at the time of its execution, but then (if this opinion can be referred to) it is plain that I made it out by assuming facts which were not proved, and did and do not appear to exist from any thing contained in the policy itself. And in this I was satisfied afterwards that I erred ; but coming also to the conclusion that parol evidence was admissible to prove the facts assumed by me, which indeed was offered by the plaintiffs on that trial but rejected under the impression I entertained of it at the time, I felt that injustice might be done unless a new trial were granted and accordingly gave my voice in favour of it.

It has also been claimed for the plaintiffs, that the sixth condition, before mentioned and repeated, provides only for an insurance made on the same property *prior* and not subsequent to the execution of the policy by the defendants ; and consequently has no operation whatever in their favour, on account of the policy executed subsequently by the North America Insurance Company. It may be that a strictly grammatical construction of this condition would exclude policies effected subsequently on the same

property; but to give this construction to it, would seem to be repugnant to what was most probably the understanding of the parties, and certainly would go to defeat the great object of its annexation to the policy; which must have been to place the defendants on an equal footing with other insurance companies, in regard to contribution of paying only a *pro rata* proportion of the loss, whenever another policy, executed by a different company, was in being at the time of the loss. Other insurance companies, or at least the North America Insurance Company, have been very explicit in providing against their being liable for more than a *pro rata* proportion of the loss, where the property destroyed by fire has been insured elsewhere, either previously or subsequently to the execution of their policy.

It is further contended by the counsel of the plaintiffs, that even if the North America policy did include the goods in the store, after its execution until the time of the fire, still it never took effect or became binding upon the company, because the policy effected with the Franklin Insurance Company does not appear ever to have been allowed of, and so specified on the policy of the North America Insurance Company, according to the stipulation contained in it. 'If, however, you should be satisfied, from the evidence, that the North America Insurance Company were informed of the policy effected previously with the Franklin Insurance Company, as James G. Stacey testifies they were, at the time they executed theirs, and that, without any sufficient reason, they neglected on their part to specify an allowance thereof on their own policy, according to the stipulation contained in it, they ought not to be permitted to make such objection, or to take advantage of their own neglect, after the loss has accrued; nor can the plaintiffs do it; so that the policy of the North America Insurance Company would be binding upon them, notwithstanding the want of such allowance being specified on the policy itself.

Having now answered substantially, I believe, all the questions presented in this case, I shall proceed to notice it in reference to the parol evidence which has been given. But first let me caution you against suffering any feeling of sympathy, or hardness of the case, to have the least influence upon your judgment in deciding it. It becomes us all to be free from all prejudice or prepossession in favour of, or against either party. Nothing is more dangerous to the impartial and upright administration of justice, than those feelings which sometimes are very naturally excited, or produced by the apparent hardship of the case; or those prejudices which may happen to be raised against one of the parties, by his conduct being presented but partially, as it were, to our view. A good deal has been said here as to the unreasonable conduct of the defendants, in not having either paid or advanced to the plaintiffs the full amount of their demand in this action; that although the

defendants might not have been legally liable on their policy to pay it, yet when they were offered by the plaintiffs an assignment of the policy of the North America Insurance Company, on condition that they would advance the sum in contest, they ought to have done so. I confess, I cannot see why they ought to have done so, if it be true that the plaintiffs, according to the terms of the policy of the Franklin Insurance Company, and their own acts, were not entitled to demand the same. The defendants were right in refusing to take the assignment of the North America policy on the terms proposed; for it would only, as it seems, have been buying a lawsuit, which ought to be avoided, as it can seldom be justified. Besides, if you believe the evidence, the plaintiffs by their own conduct seem to have furnished strong colour at least, if not justifiable ground, for the defendants refusing to pay more than they did. For it appeared by the evidence, that immediately after the fire had taken place, Mr James G. Stacey called at the office of the defendants, on Mr Bancker, and wished to know of him if the plaintiffs had ever given notice of their having effected an insurance for $15,000 on the goods destroyed, with the North America Insurance Company, and agreed then that they, the plaintiffs, could only claim a *pro rata* proportion of the loss from the defendants—in fact, said so in express terms according to the testimony of Mr Bancker and Mr Flickwir.

This was, you will observe, but about six weeks after the date of the policy with the North America Insurance Company, when it might well be supposed that Mr Stacey would not have forgotten or been mistaken as to the design or intent with which that policy was obtained; but it is said his mind was disturbed by the fire, and the loss just occasioned by it; and being under a state of excitement on account of it, he fell into a mistake. Whether it was possible that such an error could have been produced by such a cause, you will judge. But even after that, when Mr Stacey possessed himself of the policy of the North America Insurance Company, which it would seem he had not then, he continued, according to the evidence, if you believe it, to think that the North America Insurance Company were liable for all the coffee destroyed in the store. This, he said, was his view of the policy from reading it; but certainly he must have known then, as well as he can possibly do now, what his intention was when he obtained the policy of that company, and whether it was intended as a policy on the specific goods on board the ship John Sergeant, or not. But it would seem that he did not pretend to assert that such was his intention; and if it were, it is difficult to account for his not doing so then, when the thing was fresh in recollection. Under these circumstances, had not the defendants reason to believe that at the utmost they were only liable for a *pro rata* contribution to make good the loss; and if so, why should they pay what they were, as they had reason to believe, not

bound to pay? The directors of this company are not the abso-
lute owners of the funds belonging to the company; they are but
partially intrusted as such; and it would be a violation of their
trust and their duty to pay what, in conscience, they believed the
company not liable for.

Much has been said in regard to the connection which the two
principal witnesses, Mr Stacey and Mr Bancker, for the respec-
tive parties, have had with the cause. Mr Stacey, one of the
plaintiffs on the record, and interested as such when the suit was
brought, has been adduced to sustain the claim of the plaintiffs;
and Mr Bancker, president of the company of the defendants, and
a stockholder of it also, until within a day or two before this trial
commenced, has been adduced as a witness on their behalf. But
you have been told that Mr Bancker appears under circumstances
indicative of his being possessed, as it were, of all the feelings of
the party for whom he was called to give evidence; because, it
is said, it is obvious that he only laid off his presidency and parted
with his stock to meet the exigency of the occasion, by giving evi-
dence for the defendants; and this being the case, his mind must
be under a bias in their favour; and even his recollection of facts
more or less affected by his late connection with the defendants;
that his testimony, therefore, ought to be received with the most
scrupulous caution.

Now, it may be that Mr Bancker's late connection with the
defendants has had some influence upon his recollection in respect
to facts, as well as upon his opinions concerning the matter in
controversy; for we frequently find that not only the opinions of
men of the most strict integrity, who have had a particular inte-
rest in the matter, but their recollections also of facts, differ very
materially from others who stood indifferent, but of equal respect-
ability, possessing the same opportunities and means of knowledge
in regard to the things of which they are called to testify. But
in respect to Mr Stacey's being a witness, the counsel for the
plaintiffs would have you believe that his situation is different,
and not obnoxious to the like objection raised against Mr Bancker,
as respects his mind and recollection being under the bias of his
late connection with the demand in this suit, though the party
actually claiming it; because, as it is alleged, it became expedient
for the plaintiffs, in the casual course of events, having no con-
nection with the claim here, to dissolve their partnership; and Mr
Stacey, the witness under the arrangement made for this purpose,
parted with all his interest in the partnership concern; his feel-
ings, however, as to this claim were most likely excepted. It is
not probable that he parted with them altogether, nor that he
parted with his interest in the concern, as a partner, without any
view of becoming a witness in the cause to support the plaintiffs'
claim. Because, it would seem from the evidence, that imme-
diately after the destruction of the goods by the fire, he was of

opinion that the defendants were not liable to pay the demand made here; that he did not then consider the policy, which he had effected only about six weeks before with the North America Insurance Company, as being specifically on the coffee or merchandise imported by the ship John Sergeant; but after brooding over the subject for some little time, he for some reason or other would seem to have changed not only his opinion, but likewise his recollection in regard to it. He then recollected, as it would seem, that his intention was to have the specific goods belonging to the plaintiffs on board the ship John Sergeant insured, and no others; and accordingly insisted upon the defendants paying them the full amount of the policy subscribed by them. The defendants, however, refused; and Mr Stacey, the witness, and his partner, brought this action in order to compel the payment of it, and continued to prosecute it as plaintiffs for their joint benefit, until the 16th of June 1834, when a trial of the cause was about to be had before arbitrators chosen for that purpose.

Then, on that date, it being as it were on the eve of the expected trial, the witness, Mr Stacey, made an assignment of his interest in the partnership effects, to his brother and co-partners, and takes at the same time a release from his brother, acquitting and indemnifying him from all claims that existed or should arise against him by reason of this late partnership; and, on the following day, a sum of money, then thought to be sufficient to cover the costs of this action, was deposited by one or other of them, with the prothonotary; which last act would not have been requisite for any purpose whatever, except that of making Mr James G. Stacey, a witness for his brother, the co-plaintiff; and accordingly he was produced as such before the arbitrators, and gave evidence in support of the plaintiff's claim. Then it would appear that every observation made in regard to the bias and feeling of Mr Bancker, applies at least with equal force to Mr Stacey, who certainly had a much greater interest in receiving the claim than Mr Bancker had in refusing it; and who now, as it may be presumed, does not feel altogether indifferent whether his brother shall recover it or not. There is certainly some discrepancy between the evidence of Mr Bancker and Mr Stacey; and particularly as to what passed between them at this first interview after the fire; in which Mr Stacey swears positively that he uttered no such words as *"pro rata* contributors," that he did not use the words *"pro rata"* at all; whereas Mr Bancker swears he did; and in this Mr Bancker is sustained and corroborated by Mr Flickwir, who was present and testifies most positively that Mr Stacey did use the words *"pro rata,"* and said that the defendants were only liable for a *pro rata* contribution towards repairing the loss occasioned by the fire in the store. Then, supposing these three gentlemen to be of equal intelligence and integrity, and that this contradiction has arisen from a mistake in

recollection, as most likely it has, it is more likely that Mr Stacey, being one only, should have made the mistake, than that the others, being two in number, should have made it, because it is not so probable that two should be mistaken in such a matter as one; and if you find that Mr Stacey's recollection has failed in any accuracy as to one material fact, it may be a good reason for not trusting it in regard to others, unless corroborated by other testimony. But it is said that Mr Stacey ought to be considered as having testified truly, because he was not contradicted by Mr Bancker on the trial before the arbitrators, where he testified as he had done here. But Mr Bancker has explained that, and given the reason why he did not; stating that before the arbitrators, he, Mr Bancker, was examined prior to Mr Stacey, and that, after hearing Mr Stacey's statement, he offered to correct the mistake in it, but was prevented by the defendants, on whose behalf he was called as a witness, by their telling him it was unnecessary, as the case was not going to be argued before the arbitrators.

Let me now call your attention for a moment to the parol evidence given either for the purpose of proving that the policy, subscribed by the North America Insurance Company, was or was not a policy on the specific goods on board the ship John Sergeant, at the time of its execution. The policy in its terms does not show, as I have already told you, that it was intended to be applied specifically to those goods.

For if such had been the intention of the parties at the time of executing it, it is reasonable to suppose or to conclude that words of a more definite character, pointing exclusively to those goods, would have been employed, such for instance, as " the coffee and other merchandise, imported by the ship John Sergeant, now in this port, either on board of her, or in the brick store, No. 37, South Wharves." But this is not the language used, it is on " coffee and other merchandise generally, either on board the ship John Sergeant, or in the brick store, No. 37," which embraces coffee and other merchandise generally, in either of those places at the time, no matter where they came from, or by what vessel they had been imported, or whether they had been imported at all or not. Then let us see how far the evidence of Mr Stacey goes to prove that it was otherwise intended. But here I must caution you against receiving as evidence, certain declarations which fell from Mr Stacey occasionally, though perhaps inadvertently of what his intention was in making out the order for the policy. You will recollect that the plaintiffs offered to prove by Mr Stacey among other things, what his intention and meaning were in making out the order for the policy in the terms he did; and that the offer as to this was overruled, and such evidence of intention considered by me altogether inadmissible. So far therefore as any thing of the kind dropped from him in the course of giving

his testimony, it must be laid out of view entirely, so as not to have the slightest influence upon your decision.

It is only the facts and circumstances connected with the subject-matter of the policy, and the communications that passed at the time between the parties, of which proof has been given, that are to be taken into your consideration, in order to determine whether the policy was intended to apply specifically and exclusively to the goods imported by the John Sergeant.  In the first place, then, you have the distinct admission by Mr Stacey himself, made when he first called on Mr Bancker after the fire, that the defendants were only liable for a rateable proportion of the loss with the North America Insurance Company, which could not have been if the insurance with the latter company had been on the goods alone imported by the John Sergeant.  Next, you have it in evidence from Mr Stacey, that all the coffee and other merchandise imported by the John Sergeant, with which the plaintiffs had any concern at all, at the time of the execution of the policy by the North America Insurance Company, belonged to them as the absolute owners thereof.  Now, if this were so, it was wholly unnecessary to have introduced the words, " for whom it may concern," into the policy, seeing that the plaintiffs, in whose names the policy was made out, were the only persons interested in it.  But this clause in that case would make the policy applicable to the goods in the store; for there Mr Stacey testifies that they had goods, consisting of coffee and other merchandise, at the time in their care, belonging to other persons, and that the whole amount of the goods there, exceeded the amount of their policy with the Franklin Fire Insurance Company, between 3 and $4000.  Again, it would appear by the evidence of Mr Stacey, that the terms, " and other merchandise," in the North America Insurance policy, were more fitly applicable to the goods in the store, than to those then on board the John Sergeant; for the term " coffee," without the words " and other merchandise," would seem to have embraced every thing which the plaintiffs had any concern with at the time on board the John Sergeant, excepting some wood of a particular species, and of trifling value, imported at the request of a cabinet-maker in this city, which was to be his upon his paying for it.  Whether this wood alone could have been the only motive for inserting the words " and other merchandise," in the policy, you will decide.  But you have it also in evidence from Mr Stacey that, at the time he effected the policy with the North America Insurance Company, the plaintiffs had about $20,000 worth of coffee on board the ship John Sergeant, and likewise at the same time between 13 and $14,000 worth of coffee and other merchandise in the store, No. 37.  Now this seems to be the only evidence when taken in connexion with the fact clearly established by the evidence, that the premium paid the North America Insurance Company for their policy of $15,000 was only what would

[Stacey v. The Franklin Fire Insurance Company.]

have been required in case of the same amount having been insured in either place. From these facts a presumption might arise, that different goods in either place, at the same time, to the amount of the policy, could not have been intended to be insured and embraced by it; because the risk would be double, and the premium only single; which would seem to be unreasonable. But then, you have the evidence of Mr Bancker and Mr Smith going to repel this presumption, and if believed, it would seem to do so. They have testified that, down to the time of the great fire in Front Street, about a year or a little more since, such insurances were frequently made at the Franklin Insurance Office, and other insurance offices named by them in this city; and, if I understand them, that it was a common practice to do so in the offices mentioned. To impugn this, you have the evidence of Mr Coffin, a witness on behalf of the plaintiffs, and a stockholder in the North America Insurance Company, and secretary of it since 1832, who testifies that he has no recollection of an insurance being made at their office, whereby a double risk was to be encountered for a single premium paid, though he could not say that it had not been done. You will perceive, however, that Mr Coffin's testimony, admitting it to be true, does not go to do away the effect altogether of the testimony of Mr Bancker and Mr Smith in this case. The cause is here submitted to you under the advice and direction which I have given.

The jury found a verdict for the plaintiffs for the sum of $6491.36, being the full amount of their claim with interest.

The defendants moved for a new trial, and filed the following reasons:

1. Because the learned Judge ruled that James G. Stacey, one of the plaintiffs in this case, was a competent witness for the plaintiffs, and admitted him to testify.

2. Because the learned Judge admitted evidence to be given of conversations between James G. Stacey, one of the plaintiffs, and the president of the North America Insurance Company, before and at the time of effecting a policy with the said company; which conversations went to show the intention of the parties at the time the said policy was effected.

3. Because the learned Judge admitted parol evidence to vary or affect the construction of a policy of insurance under seal.

4. Because the witness, J. G. Stacey, testified in respect to his purpose and intention in making the said insurance.

5. Because the learned Judge admitted certain invoices and accounts produced on the part of the plaintiffs, to affect the construction of the said policy.

6. Because the learned Judge refused to permit the defendants to read in evidence certain policies of insurance effected with different Insurance Companies of the city of Philadelphia by differ-

[Stacey v. The Franklin Fire Insurance Company.]

ent persons, whereby goods were insured in different places for the same premium as in one place.

7. Because the learned Judge refused to permit the defendants to prove that the plaintiffs had insured goods in different places for the same premium as if in one place.

8. Because the learned Judge refused to permit the defendants to give in evidence their order books for the purpose of proving that the plaintiffs had insured with them goods in two places at once.

9. Because the learned Judge refused to permit the defendants to prove by a witness who had been president of the Franklin Fire Insurance Company, that he had insured for the plaintiffs goods in different places for the same premium as in one.

10. Because the learned Judge admitted Arthur G. Coffin, a stockholder in the North America Insurance Company, to testify on the part of the plaintiffs.

11. Because the learned Judge permitted the plaintiffs to read in evidence certain letters addressed by the plaintiffs or one of them, to the secretary of the Franklin Fire Insurance Company, after the loss by fire, containing statements of the purpose and intention of the plaintiffs in making the insurance with the North America Insurance Company; thereby introducing to the jury evidence varying the construction of the policy effected with the said company.

12. Because James G. Stacey was allowed to testify after he had admitted on his cross-examination, that the firm of J. G. & D. B. Stacey were indebted to several persons for part of the insurance money received by them from the defendants in this case.

13. Because the learned judge ought to have directed the jury, after the said admissions by J. G. Stacey, to dismiss his testimony from their minds.

14. Because the learned Judge refused to allow the defendants to prove what was testified by Samuel Grant on a former trial of this cause; the said Samuel Grant having then been called by the plaintiffs, and having been then, and continuing to be a stockholder of the Franklin Fire Insurance Company.

15. Because the learned Judge ought to have charged the jury that there was no parol evidence given in this case that was competent to affect the construction of the policy.

16. Because the learned Judge ought not to have submitted to the jury, as a question for them, the construction of the policy of the North America Insurance Company.

17. Because the learned Judge ought to have charged the jury that the law upon the whole case was with the defendants.

18. Because the verdict was against the law.

19. Because the verdict was against the evidence given in this case.

[Stacey v. The Franklin Fire Insurance Company.]

The case was argued by

*T. I. Wharton* (with whom was *I. S. Smith*), in support of the motion; and

*Meredith* and *J. Sergeant, contra.*

The opinion of the Court was delivered by

ROGERS, J.—This is an action of covenant on a policy of insurance for $10,000 against fire, dated the 26th of July 1833, for a premium of $22 for one year from the date, " upon merchandise generally, including liquors and groceries contained in the store No. 37 South Wharves, for account of whom it may concern, say merchandise without exception." The 7th of January 1834, merchandise included in the policy to the value of $13,000 and upwards, was destroyed by fire. The plaintiffs claim for a total loss; and inasmuch as the full premium has been paid to the defendants, the plaintiffs are entitled to recover, unless something has occurred subsequently which alters the relative situation of the parties. The defendants deny that they are liable for a total loss, but admit that they are responsible for two-fifths of the loss, amounting to $5400, which has been already paid. In support of this position *the defendants say that the plaintiffs,* subsequently to the date of their policy, viz. on the 22d of November 1833, effected a policy of insurance against fire for $15,000 with the North America Insurance Company of Philadelphia, upon the same goods, in the same store, for the period of four months then next ensuing. That consequently, according to the sixth condition, which is part of the policy, and which is in the following words; " that persons insuring at the Franklin office must give notice of any other insurance *made* on their behalf by the same, and shall cause such other insurance to be endorsed on their policies; in which case each office shall be liable to the payment only of a rateable proportion of any loss or damage which may be sustained; and unless such notice is given, the insured will not be entitled to recover in case of loss;" they are liable to an average loss only. If the latter insurance was on the same goods, it is not pretended that any notice was given; but of this the defendants take no advantage, but have already paid their proportion of the loss; but they insist that this is the extent of their liability. In answer, the plaintiffs contend, first, the clause in the policy of the Franklin office does not apply, because, by the terms of the condition, on which reliance is had, it is not required to give notice of a subsequent policy, but of an insurance *made* at the time of effecting the insurance; or, in other words, applies only to a prior and subsisting insurance. Secondly, that to avoid the first policy, the latter must be such a policy as would enable the plaintiffs to recover upon it; and thirdly, they deny that the second was a policy on the same goods.

It is admitted that the plaintiffs are entitled to an indemnity to

II. — 2 v

[Stacey v. The Franklin Fire Insurance Company.]

an amount equal to $10,000, either from the defendants, or in a rateable proportion from the defendants and the North America Insurance Company. This is therefore substantially a contest between the respective underwriters, as to their proportions of the loss; and the plaintiffs, with a show of reason, complain that they are made the victims of a law-suit, with which they ought to have no concern. It is nothing to them whose fault it is, as it is very certain, that if there had been that spirit of accommodation and fair dealing which ought to actuate those companies, and which it were their interests to observe, they would not have been placed in this unpleasant predicament. The controversy might have been settled, as it was just and right it should be, in a suit between the conflicting underwriters. So much was I struck with the obvious injustice of this proceeding, that, at the first argument, I was of the opinion, and I still remain so, that the plaintiffs were at all events entitled to recover from the defendants, as for a total loss, leaving the defendants to their remedy against the North America Insurance Office. And such *at one time* was undoubtedly the law, for on a marine insurance, if the policy contains no stipulation upon the subject, the insured may insure with different underwriters to any amount, and recover indemnity from any of the underwriters. It is well settled, that upon a double insurance, though the assured is not entitled to two satisfactions, yet, in the first action, he may recover the whole sum insured, leaving the defendant to recover a rateable satisfaction from the other insurers. In such cases, the two policies are considered to make but one insurance. The assured may sue the underwriters on both policies, but he can recover only the real amount of his loss, to which all the underwriters shall contribute in proportion to their several subscriptions. He can receive but one indemnity, but the different underwriters are made sureties for each other. But it is said, that the clause in the policy to which reference has been made, alters the law in this respect, and exempts the underwriters from any more than their proportion of the loss. This idea has taken its rise from an observation of Mr Condy, in his edition of Marshall on Insurance, page 152, who, speaking of the case of *Thurston* v. *Koch*, (4 *Dall.* 348), which was a marine insurance, says, " This decision, being contrary to the practice of the merchants in Philadelphia, a clause was added to the policies effected there, which it is believed has been generally followed in the United States, by which it is expressly stipulated, that the loss shall be paid by the different policies, according to their respective dates, first exhausting those of the earliest dates. This, and a *dictum* in *Peters* v. *The Delaware Insurance Company,* (5 *Serg. & Rawle* 481), which is also a marine insurance, is all the authority that we have for the prevalent notion, that the assured can recover no more from the first underwriter, who has received a full premium, than his proportion of the loss when the property

is doubly insured. In the case of *Thurston* v. *Koch*, the English rule was adopted (contrary to the rule on the continent), that where a double insurance is made, and the underwriters in the first policy pay the whole loss, they are entitled to recover from the underwriters in all subsequent policies, on the same risk, a rateable proportion, which shall divide the loss equally among all the underwriters, on the same risk, without relation to the date of the policies, or the time of subscribing. The first underwriters had paid the whole loss, and the question was, whether a subsequent underwriter was liable to pay more than the amount of the loss beyond the sum previously insured. The court decided that he was, adopting the English rule, that upon a double insurance, though the insured is not entitled to two satisfactions, yet upon the first action, he may recover the whole sum insured, and may leave the defendant therein to recover a rateable satisfaction from the insurers. A recovery may be had of the first and subsequent underwriters, and those who pay the loss may demand a proportionable contribution from the other insurers. The different underwriters were in effect made insurers for each other. "And this," says Phillips, in his treatise on the Law of Insurance, citing 5 *Serg. & Rawle* 475, "is one reason for introducing the clause respecting prior insurances."

It does not appear to me from a fair interpretation of the clause in a fire insurance, it was intended to alter the right to recover against the first underwriter, the whole loss, according to the agreement, leaving him to recover against the subsequent underwriters, their rateable proportions. It was intended to prevent fraud, and also from being insurers for each other, which is the effect of recovering from any one of the underwriters without regard to date; and, as is said in 5 *Ohio Rep.* 467, to apprise the assurer of his right to claim a contribution from his co-insurers. And this, rightly understood, is the opinion of Mr Condy, who says that, under this clause, the loss shall be paid by the different policies, according to their respective dates, first exhausting those of the earliest. They are only liable to their rateable proportions, as between themselves, nor can the assured select a subsequent underwriter so as to throw the whole loss on him. If the underwriters intended to make such an entire revolution in the law, as to declare that they would not be liable according to the contract to the assurer, who had paid a full premium, the intention should have been expressed in much more express and unambiguous terms. A double insurance is not to be discouraged, except as an instrument of fraud; but where the transaction is fair, it can have but one effect on a prior underwriter, and that a beneficial one, by enabling him to recover from a subsequent insurer, an average proportion of the loss. It is but fair, however, to say, that this is my opinion only. The cause will be put on other grounds.

The second ground is, that the condition applies to a prior and

not a subsequent insurance. And, in the absence of all authority, I should have inclined to that opinion, because, where an insurance company uses ambiguous language, capable of different grammatical constructions, it should be construed in the sense most favourable to the assured. But words precisely similar in a policy have received an interpretation in a sister state; and as it is desirable that the rules which regulate the commercial intercourse of citizens of the Union, should conform to each other as nearly as possible, I do not feel myself at liberty to depart from it. *Harris* v. *Ohio Insurance Company*, (5 *Ohio Rep.* 467).

It is further contended that to make the defence available, the defendant must show that the plaintiff not only made a double insurance on the same goods, but that the plaintiffs were entitled to recover a rateable proportion of the loss from the subsequent underwriter. And this, he insists, is not the case here, for admitting, for the sake of argument, the policies are on the same goods, it is provided in the policy of the North America Company " that it (the policy) shall not take effect, or be binding to the said corporation, in case the assured shall have already made, or shall hereafter make, any other assurance upon the property aforesaid, unless the same *shall be allowed of* and specified on the policy, in which case, this company will bear rateably, and no more, of any loss from the perils hereby insured against, which may happen to said property, in proportion to the several insurances then existing thereon." The defendants' defence rests on this, that the plaintiffs are doubly insured; but if the plaintiffs could, at no time, have recourse to the North America Insurance Company, it cannot, with any propriety, be said that he was doubly insured. If the plaintiffs have failed to perfect their contract with the subsequent underwriter, by omitting to have the prior insurance allowed of and specified on the policy as is required, it is difficult to imagine in what way the prior insurance can be invalidated or affected. It is a vain, nugatory, void act. And this is the view taken of the question in *Jackson* v. *The Massachusetts Mutual Insurance Company*, (23 *Pick.* 423). An assurance to avoid the policy must be a valid and legal policy, and effectual and binding upon the assurers. It is not pretended the proviso in the North America Insurance Company has been complied with; but unless the prior policy is allowed of and specified on the policy, it is wholly inoperative and void, and of course, upon every principle of fair reasoning, it cannot avail the defendants, as a defence, in this action. And thus the matter stands, without doubt, on the face of the policies; but the defendant insists that this doctrine, the force of which cannot be controverted, does not apply, because J. G. Stacey, who was examined as a witness for the plaintiff, in despite of an objection by the defendants, says, that he had given Mr Smith notice of the insurance at the Franklin office, although he immediately adds, of other property insured at the Franklin office.

Taking all the testimony together, I cannot suppose that the witness intended to say that he told Mr Smith he had insured the same goods at the Franklin office, and that he mentioned this at the time with the view of having it endorsed on the latter policy. It is certain that Mr Smith could not have so understood it; it would be difficult to imagine, if such was the fact, why the indemnity which is required was not made in conformity to the intimation. To make the policy valid, two things are required. 1st. It must be allowed of; and secondly, it must be specified on the policy. It requires an act of the company, or its authorized agent, and it may admit of doubt, whether a notice simply, without more, would enable the assured to recover. Give the testimony its utmost force, the existence of a prior policy was mentioned, but there was no request or intimation that he desired it should be noted on the subsequent policy. Doubtless, when the company, or its agent, consented to specify it on the policy, and omitted to do so, they would not be allowed to set-off their own laches as a defence. But that does not appear to be the case here; such laches has not been proved as would enable the plaintiff to recover from the North America Insurance, on the ground that the agent of the company had omitted to do that which by law he was required to do. It must be remembered, that to defeat the action against the first underwriter, the defendant must give the plaintiff a right of action against the subsequent insurer. He must, in effect, show a double insurance, which it cannot be, unless it gives the plaintiff a right of action for a proportion of his indemnity.

It is contended that this is not a double insurance for another reason, that is, that the latter insurance is on the specific goods brought by the John Sergeant. The insurance in the Franklin office is "upon merchandise generally, including liquors and groceries contained in store No. 37, South Wharves, for account of whom it may concern; say merchandise without exception." In the North America Insurance Office it is "on coffee and other merchandise, without exception, either on board the John Sergeant in this port, or in the brick store No. 37, South Wharves, in the city of Philadelphia." We cannot but be struck with the total absence of precision in the language of both policies; and as the great object is to discover the intention of the parties, it would be unsafe to take the words in their literal sense. So without going into the question of whether parol testimony of what takes place at the time may be admitted to explain a policy of insurance, yet it may be safely said that the subject-matter of marine and fire insurance, and other mercantile contracts, makes it necessary to go out of the written instrument, in order to interpret it, more frequently than in most other contracts.

Policies are to be construed largely, according to the intention of the parties, and for the indemnity of the assured, and the advancement of trade. 1 *Burr.* 345; 2 *Binn.* 373. Facts and cir-

cumstances *dehors* the instrument may be proved, in order to discover the intention of the parties.  We are therefore at liberty to advert to the first, that the Messrs Staceys were commission merchants, and that the object of inserting in the first policy, " merchandise without exception," was to dispense with the restriction upon what was considered as hazardous risks, enumerated in the 1st, 2d, and 3d sections of the 13th article.  The plaintiffs insured to the amount of $10,000, a sum supposed to be sufficient to cover the ordinary risks to which their property, and the property of their consignees would be exposed from fire.  Under these circumstances the John Sergeant arrived in port, having on board coffee principally, and some other articles of comparatively small value, which it was thought prudent also to insure; and as it was uncertain whether the cargo would be suffered to remain on board or whether it would be stored in whole or in part, it was insured as coffee either on board the John Sergeant or in the brick store No. 37, South Wharves.  If this was all, it would, I think, be held to be a specific insurance on coffee to the amount of $15,000, whether it remained altogether on board or was altogether or in part removed into the store.  But such is the looseness of expression, that even this construction would be doing some violence to the language.  The insurance is on coffee and other merchandise without exception, either on board the John Sergeant or in the store. What is the meaning of the words, " and other merchandise without exception," connected with the other parts of the assurance ? The defendants say that they apply to the subject-matter of insurance, and that it is an insurance on coffee and other merchandise, whether on board vessel in the port or in store; whether imported in the ship or received in store from other sources.  If this be so, it is on the same goods embraced in the Franklin Insurance, and the defendants are only entitled to their proportion of the loss, viz. two-fifths, that is, as $10,000 is to $25,000.   The plaintiff insists, that being sufficiently insured already to cover ordinary risk to the general business as commission merchants, the object of the second insurance was to effect a specific insurance on the coffee brought by the John Sergeant, whether it remained on board or was stored.  That the reason for inserting the words, " and merchandise without exception," (which were taken from the policy of the defendants themselves, where they were used for a similar purpose) was to prevent the policy being avoided by having on the premises what they would be likely to have, in their business, certain goods enumerated in the policy as hazardous risks, or, in other words, they were desirous of having what has been denominated, a clean policy.  Although, it must be confessed, there is some doubt about it, yet we incline to adopt the latter construction.  If, as is alleged, the first insurance was sufficient to cover all probable risks to which the goods usually in the store might be exposed from fire, it is difficult to imagine why an additional insurance, to

[Stacey v. The Franklin Fire Insurance Company.]

so large an amount, should be effected, as it has not been intimated that any doubts were entertained of the entire solvency of the first underwriters. The fairness of the transaction has not been questioned. No fraud has been insinuated; and if, as is supposed, it was intended as a double insurance, it seems strange it should not have been endorsed on the last policy at least, as the Messrs Staceys have, it is believed, ordinary intelligence, and must have been aware of the necessity of it to validate these contracts. And it is still more difficult to conjecture why Mr Smith did not endorse it on the latter policy, if he was informed, as the defendants say, that there was another policy on the same goods in the Franklin office. He must have been aware that this was absolutely essential by express terms of the policy of the office, and that the omission to endorse it would endanger both policies. But all this is susceptible of easy explanation, if we suppose the first policy covered the goods generally in the store, and the second the specific goods imported in the John Sergeant. He might well say that he had given Mr Smith notice of the insurance at the Franklin office of other property, without intending to say, or having the least idea that the latter was an insurance on the same goods. And Mr Smith must have so understood it, as otherwise, occupying the situation he did in the office, the endorsement would have been made; for we are not to suppose him so extremely negligent of his duty as to omit doing what was absolutely necessary to the validity of the contract, much less can we believe the omission was wilful, which would be a gross fraud. But it is said that upon the removal of the goods from the ship into the store, the policy of the Franklin office immediately attached, so as to render them liable for their proportion of the loss of the goods which were imported in the John Sergeant. But this is not so clear, for I see nothing to prevent assurers, after a general insurance, to effect a specific insurance on particular goods, on which alone another subsequent underwriter would be liable without contribution.

Under the views which have been taken of this cause, it is obviously unnecessary to perplex ourselves with a consideration of the numerous errors which have been assigned to the admission and rejection of testimony. This is a motion for a new trial, and if any error has been committed (of which I am not convinced), as it would not alter the result, no new trial will be ordered. This cause has been twice tried, and twice the verdict has been in favour of the plaintiffs: it is therefore time there should be an end to the controversy. The defendants should be compelled to do justice to the plaintiffs by paying them the amount of the insurance, for which they have received a full premium.

Rule discharged, and judgment for the plaintiff on the verdict.

Mr Justice Sergeant did not sit in this cause, being a stockholder in the Franklin Fire Ins. Comp.