## Case No. 9,305.

### MAUGER v. HOLYOKE MUT. FIRE INS. CO.

[Holmes, 287;[1] 3 Ins. Law J. 55.]

Circuit Court, D. Massachusetts. Dec., 1873.

INSURANCE—FIRE—POLICY — CONSTRUCTION — INTENTION—FACTS AND CIRCUMSTANCES EXISTING.

1. Policies of insurance are to be construed largely according to the intention of the parties, and for the indemnity of the assured, and the advancement of trade.

[Cited in Moulthrop v. Farmers' Mut. Fire Ins. Co., 52 Vt. 130.]

2. The intention of the parties may be shown by evidence of facts and circumstances existing when the insurance was effected, but not stated in the policy.

[Cited in Moulthrop v. Farmers' Mut. Fire Ins. Co., 52 Vt. 130.]

Hearing upon the report of an assessor appointed to assess damages after a default. The suit was brought [by Victor E. Mauger] to recover for a loss under a policy of insurance issued by the defendant. The only question in the case was as to the interpretation of several policies of insurance, the material parts of which are stated in the opinion.

Abbott & Jones and Shattuck & McFarland, for plaintiff.

Ives & Lincoln, for defendant.

SHEPLEY, Circuit Judge. The question in this case arises upon the facts stated in the report of the assessor appointed to assess damages upon a default. On the 20th of April, 1872, the assured (Armstrong & Co.) effected insurance to the amount of $3,000, "on their new lithographic printing-press, contained in the fourth story of brick building situate No. 13 Bowker street, Boston, Mass. It is understood that $300 of the amount shall attach on hand-presses." Just before effecting this insurance, Armstrong & Co. had purchased a new lithographic-press worth $3,500, and of a smaller size than the one

1 [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

subsequently purchased, and referred to in the defendant's policy. Permission was given July 3 for removal to fourth and fifth stories of stone and brick building, corner of Milk and Devonshire streets, Boston. On the twenty-eighth day of June following, Armstrong & Co. procured insurance to the amount of $4,000 "on their lithographic-presses and ink-mill, with shafting and belting connected therewith, contained in the fourth and fifth stories of stone building 57 Milk street, corner of Devonshire street." At this date Armstrong & Co. had two steam lithographic-presses and several hand-presses.

Oct. 30, 1872, Armstrong & Co. purchased the steam lithographic-press, described in defendant's policy now in suit, which insured them in the sum of $4,300, from Nov. 1, 1872, to Nov. 1, 1873, "on their Hugh & Kimbers No. 6 steam lithographic-press, size 30x40, situate in chambers of granite and brick building, situate No. 57 Milk street, corner Devonshire street," payable, in case of loss, to the plaintiff.

By the terms of that policy defendant is liable to pay the plaintiff three-fourths of the value of that property on the twenty-second day of January, 1873, being sixty days after the date when proof was made of the loss by fire, which occurred on the tenth day of November, 1872, unless that amount is to be reduced under the provisions of the following clause in the policy: "In case of any other contract of insurance upon the property hereby insured, whether such contract be valid or not, as against the parties thereto, or either of them, the assured shall not, in case of loss or damage, be entitled to recover of this company any greater portion of the loss or damage sustained than the amount herein insured shall bear to the whole amount insured on said property."

At the time of the fire, Armstrong & Co. had in their chambers, 57 Milk street, corner of Devonshire street, three steam lithographic-presses; also hand-presses and ink-mill, and shafting and belting.

Defendant contends that all the policies attach to the press last insured, and that the clause in relation to double insurance is applicable in adjusting the loss.

That the policy of the 20th of April did not attach, is too clear to require any argument or authority. That was in effect an insurance of $2,700, upon a specific steam lithographic-press, described as the new one contained in the fourth story of brick building situate No. 13 Bowker street, and of $300 on hand-presses. No possible construction of the language could make this insurance cover any other steam lithographic-press than the then new one thus specifically described.

The language of the second policy of June 28, 1872, "on their lithographic-presses and ink-mill, with shafting and belting connected therewith, contained in the fourth and fifth stories of stone building, 57 Milk street, corner of Devonshire street," is not so specific.

Policies of insurance are to be construed largely according to the intention of the parties, and for the indemnity of the assured, and the advancement of trade. Facts and circumstances dehors the instrument may be proved in order to discover the intention of the parties. Stacey v. Franklin Fire Ins. Co., 2 Watts & S. 506. This was the case of an insurance upon "merchandise generally, including liquors and groceries contained in store No. 37 South Wharves, for use of whom it may concern, say merchandise without exception." A second insurance was effected in another company, "on coffee and other merchandise, without exception, either on board the John Sargeant at this port, or in the brick store No. 37 South Wharves, in the city of Philadelphia." A loss happened by fire on goods in the store No. 37, not brought in the John Sargeant, or landed therefrom. After admitting evidence outside of the policy of facts and circumstances to show the intention of the parties as to the second policy being a specific insurance on other goods not covered by the first, it was held, that, as thus explained, there was not necessarily a double insurance, but that the first might be on goods generally in the store, and the second on specific goods brought by the John Sargeant, or landed in the store therefrom. Explaining the policies in this case in the light of the attending facts and circumstances at the time they were effected, the intention of the parties is arrived at without difficulty. The first policy was clearly on the new steam lithographic-press, definitely described and located. The policy of June 28, was on the two lithographic-presses then in the chambers corner of Milk and Devonshire streets, and was not intended to apply, and did not apply, to any steam lithographic-presses to be subsequently placed there. It was not a floating policy on a stock of merchandise in a store, bought for sale, and with the intention of replacing it as sold, and keeping the stock good; but on specific machinery, intended for permanent use in the location described. It was not expected or intended to embrace, and the literal meaning of the words used does not embrace, any presses not then in the building. It could only embrace such presses subsequently placed in the building, if explained by facts and circumstances dehors the policy, and the facts and circumstances do not thus explain it, or aid such a construction. The policy of Oct. 30 is specifically upon the third steam lithographic-press not in the building when the other insurances were effected, and not within the description in those policies. There was, therefore, no double insurance. The assessor, holding that the insurance procured April 20, 1872, and June 28, 1872, does not apply to the property covered by defendant's policy, has assessed the damages at $3,450, with interest thereon from Jan. 22, 1873. His report is confirmed, and judgment will be entered accordingly. Judgment accordingly.